UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LEON SMITH,

                              Plaintiff,

                                                              6:16-CV-00543

v.
                                                              (MAD/TWD)

PETER PALADINO, SCOTT D. McNAMARA,
CORY A. ZENNAMO; JOHN DOE, Police Officer;
Bureau of Police; ANTHON R. CARVELL,
JOHN DOE, Inspector General; Oneida County;
MICHAEL DWYER,

                              Defendants.
_____

APPEARANCES:

LEON SMITH
15-B-1619
Plaintiff, pro se
Clinton Correctional Facility
P.O. Box 2000
Dannemora, New York 12929

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

        The Clerk has sent to the Court for initial review the Complaint in this 42 U.S.C. § 1983

civil rights action brought by Plaintiff Leon Smith against Defendants Peter Paladino,

Department of Public Safety, Bureau of Police, Utica, New York; Scott D. McNamara, Oneida

County District Attorney; Cory A. Zennamo, Assistant Public Defender; John Doe, Bureau of

Police; Anthony R. Carvelli, incorrectly sued as Anthon R. Carvell, Oneida County

Commissioner; John Doe, Oneida County Inspector General; and the Hon. Michael Dwyer,

Oneida County Judge.  (Dkt. No. 1.)  Also before the Court is Plaintiff's application for leave to

proceed *in forma pauperis* ("IFP Application").  (Dkt. No. 2.)

## I.      PLAINTIFF'S IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee

for commencing an action.  28 U.S.C. § 1915(a)(1) (2006).  After reviewing Plaintiff's IFP

Application (Dkt. No. 2), the Court finds that Plaintiff meets this standard.  The Court further

finds that Plaintiff has filed the required Inmate Authorization Form.  (Dkt. No. 3.)  Therefore,

Plaintiff's IFP Application (Dkt. No. 2) is granted.

## II.     LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C.

§ 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the

case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii)

fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a

defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the

complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325

(1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such

as when the claims are the product of delusion or fantasy; or (2) the claim is based on an

indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437

(2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution

should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse

party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*,

700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not

frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir.

1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III.    COMPLAINT

Plaintiff's Complaint consists of a rambling, repetitive and in part incomprehensible single paragraph sixteen pages in length, followed by four unnumbered paragraphs describing the nature of the alleged wrongdoing by certain of the Defendants, and a series of undefined causes of action.[1]  (Dkt. No. 1.)   As best the Court can ascertain, on February 23, 2015, Plaintiff was stopped by two police officers who yelled out of their police car that Plaintiff was under investigation. *Id*. at 5.[2]   Undercover drug officer Defendant Peter Paladino ("Paladino") then appeared with a video camera and told Plaintiff that he was investigating him with respect to Paladino's twin sister. *Id*. at 6.  Plaintiff responded that he knew who Paladino was, and that he was a "very dirty crooked cop" who set people up. *Id*.  Paladino turned off the video camera and walked up to Plaintiff and began searching his jacket pocket in which Plaintiff had two cell phones, one of which Plaintiff claims belonged to someone else. *Id*.  6, 8-9.  Paladino took the cell phones and began going through them. *Id*. at 6.  Paladino told Plaintiff that he was the one who had been texting Plaintiff regarding a drug deal, and Plaintiff responded "'oh shit' cause

---

[1]  Plaintiff's Complaint was drafted with a clear disregard for Rules 8(a)(2) and 10(b) of the Federal Rules of Civil Procedure which require, respectively, that a pleading include, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief," and that "a party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

[2]  Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

how can you be texting me for a drug deal when you did not have my name Paladin (sic)." *Id.*

Paladino directed the other two police officers to search Plaintiff before taking him to the Police Station. *Id.* After searching Plaintiff and finding no drugs, the police officers handcuffed him and threw him in the police car and took him to the Station. *Id.* Plaintiff was searched again at the front gate and hit in the back by one of the officers who had brought him in. *Id.* at 6-7, 10. The officer who hit Plaintiff made a comment to him that he thought Plaintiff did not have any drugs on him. *Id.* at 7, 10. Plaintiff was handcuffed to a bench, and when he refused to answer Paladino's questions without an attorney present, Paladino began yelling that Plaintiff was a sex offender. *Id.* at 7.

Plaintiff was placed in the arraignment bullpen and while waiting for arraignment was approached by a district attorney and a public defender. *Id.* The public defender told Plaintiff all he was interested in was getting Plaintiff's money back for him. *Id.* Plaintiff has alleged in his Complaint that Paladino lied on the stand at Plaintiff's arraignment when he testified that he had given Plaintiff money for drugs in response to questions from Plaintiff's public defender. *Id.* at 9. According to Plaintiff, Paladino lied because of Plaintiff's relationship with Paladino's sister and his desire to have Plaintiff sent to prison to keep him away from his sister. *Id.* Plaintiff has also alleged that District Attorney McNamara did not do his job because he did not investigate Paladino as a drug user, and money that had been taken from Plaintiff, which was not drug money, was not returned to him. *Id.* at 12, 15-16. McNamara is also alleged to have had knowledge of false crimes because he knew the case against Plaintiff was false. *Id.* at 15.

Plaintiff claims that he was sold out to the District Attorney by his public defender, Defendant Zennamo, who did not allow Plaintiff to look at the paperwork given to him by the

District Attorney, and who told the District Attorney that Plaintiff would "throw" a non-existent lawsuit against them for a plea agreement. *Id*. at 16, 23. Plaintiff also claims that Defendant Judge Dwyer wanted to give him eight years because of a lie about Plaintiff suing the District Attorney by Zennamo. *Id*. at 18. Plaintiff contends the Judge was racist and wanted to give him eight years behind bars whether he was guilty or not. *Id*.

Plaintiff has alleged that Defendant police officer John Doe "is one of the Police Officers who testify (sic) against under cover drug officer Peter Paladino why he was taking the stand on February 23, 2015." *Id*. at 19. Plaintiff has also alleged that Defendant John Doe, Inspector General for the District Attorney, should have "investigated the drug officer back around of his drug case and videocorner (sic) of the so call (sic) crime of selling drugs to the officer," and that he "come into cort (sic) smiling to do wrong to me to." *Id*. at 20. Plaintiff claims that the head Commissioner of the Utica Police Department, not named as a defendant, neglected to do his job by failing to properly train police officers, failing to investigate the incident with Defendant Paladino and the video camera, and failing to investigate Paladino, who was known to be a dirty cop and a crack smoking drug user. *Id*. at 22.

## IV.     ANALYSIS

### A.     *Heck v. Humphrey*

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that

> in order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions
> whose unlawfulness would render a conviction or sentence invalid,
> a § 1983 plaintiff must prove that the conviction or sentence has
> been reversed on direct appeal, expunged by executive order,
> declared invalid by a state tribunal authorized to make such
> determination, or called into question by a federal court's issuance

> of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages
> bearing that relationship to a conviction or sentence that has *not*
> been so invalidated is not cognizant under § 1983. (emphasis in
> original).

Plaintiff alleges in his Complaint that he is presently incarcerated at Attica Correctional

Facility. (Dkt. No. 1 at 1.) The Complaint, however, does not include allegations showing the

relationship, if any, between the claims alleged in Plaintiff's Complaint and his present

incarceration.[3] If Plaintiff was convicted of a crime as a result of the arrest by Defendant

Paladino alleged in the Complaint, and his present incarceration is the result of that conviction,

his claims are likely barred under *Heck*. However, because the relationship, if any, between the

arrest alleged in the Complaint and Plaintiff's present incarceration is unclear, the Court finds

that a determination under *Heck* is premature and at this point undertakes an initial review of the

sufficiency of Plaintiff's claims without regard to *Heck*.

### B.    Oneida County Court Judge Michael L. Dwyer

Plaintiff has sued Oneida County Court Judge Dwyer for wanting to send him to prison

for eight years whether he was guilty or not because the Judge was a racist and had believed a lie

about Plaintiff suing the District Attorney.[4] (Dkt. No. 1 at 18.) It is well-established that judges

have absolute immunity from suit for acts performed in their judicial capacities. *Bradley v.

Fisher*, 13 Wall 335, 80 U.S. 335 (1871); *accord, Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per

---

[3] Plaintiff has alleged that Judge Dwyer wanted to sentence him to eight years, which
suggests a conviction, but that alone is not found by the Court to be sufficient to determine the
applicability of *Heck*. (Dkt. No. 1 at 18.)

[4] The Court takes judicial notice that Judge Dwyer was the County Court Judge in
Oneida County during the time period relevant to the Complaint. See http://judges/
newyorklawjournal.com/profile/Justice_Courts_5th_Judicial_District/Michael_Dwyer (last
visited May 23, 2016).

curiam) (holding that "judicial immunity is an immunity from suit, not just from the ultimate assessment of damages") (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Immunity from suit is overcome in only two narrow circumstances. "First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in a judge's judicial capacity." *Mireles*, 502 U.S. at 11. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.*

The Supreme Court has "generally concluded that acts arising out of, or related to, individual cases before the judge are judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). Judges enjoy absolute immunity even when a plaintiff offers allegations of "bad faith or malice." *Mireles*, 502 U.S. at 11. A judge cannot "be deprived of immunity because the action he took was in error . . . or was in excess of authority." *Id*. at 13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)). The allegations in Plaintiff's Complaint show that his claim against Judge Dwyer is related to a case that was before him and to actions that were judicial in nature.

The County Court is a court of limited jurisdiction that may exercise only such powers as are conferred by statute. *See* N.Y. Constitution, Art. 6, Subd. 11. Pursuant to New York Criminal Procedure Law ("CPL") § 10.10(2), County Court falls within the category of "Superior Court." Superior Courts have trial jurisdiction over felonies, misdemeanors, and petty offenses and have discretion to sit as local criminal courts for the purpose of conducting arraignments. *See* CPL §§ 10.20(1) & (3). Thus, Judge Dwyer was acting within the jurisdiction granted

County Courts in the State of New York with regard to the claims asserted by Plaintiff.[5]

Based upon the foregoing, the Court finds that Judge Dwyer is entitled to judicial immunity and recommends that the Complaint be dismissed as against him with prejudice on absolute immunity grounds.

### C.     Oneida County District Attorney Scott D. McNamara

Plaintiff has sued District Attorney McNamara because he allegedly failed to do his job by not investigating Paladino as a drug user, had knowledge that the case against Plaintiff was false, and failed to return money that had been taken from Plaintiff as drug money but was not drug money.  *Id.* at 12, 15-16.  Because the police and District Attorney have complete discretion over the decision to investigate, arrest and prosecute, and private citizens lack a judicially cognizable interest in prosecution or non-prosecution of a third party, Plaintiff has no claim against McNamara for not investigating Paladino's alleged drug use.  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another).

Plaintiff has not identified the § 1983 claim he intends to assert against the District Attorney in his Complaint.  Furthermore, as noted above, the Complaint does not allege the outcome of Plaintiff's arrest, including whether or not any criminal proceeding arising out of the arrest led to a conviction or was terminated in his favor.  To the extent Plaintiff intends to pursue claims for false arrest or malicious prosecution under § 1983 against McNamara, "because a public prosecutor cannot zealously perform the prosecutorial duties of the office if compelled to

---

[5]  Since Plaintiff was arrested by the Utica Police Department (Dkt. No. 1 at 19), and Utica in located in Oneida County, Judge Dwyer had geographical jurisdiction in addition to subject matter jurisdiction.  *See* N.Y. Constitution, Art. 6, Subd. 11.

work under the constant threat of legal reprisals, such official is shielded from liability for civil wrongs by the doctrine of absolute immunity."[6] *Hill v. City of New York*, 45 F.3d 653, 656 (2d Cir. 1995). The Second Circuit explained in *Hill*, *id*. at 660-61, that:

> In determining whether absolute immunity obtains, we apply a "functional approach," looking at the function being performed rather than to the office or identity of the defendant. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268-69 (1993). State prosecutors are entitled to absolute immunity for that conduct "intimately associated with the judicial phase of the criminal process." *Imbler* [*v. Pachtman*, 424 U.S. 409, 430 (1976)]. Thus, a district attorney is absolutely immune from civil liability for initiating a prosecution and presenting the case at trial. *Id*. at 430-31; *Buckley*, 509 U.S. at 273. Such official is also immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, *Buckley*, 509 U.S. at 273, or determining which offenses are to be charged. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir. 1993). Prosecutorial immunity from § 1983 liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994).

Absolute immunity is defeated only when a prosecutor is engaged in investigative, rather than prosecutorial, functions. *Bernard v. County of Suffolk*, 356 F.3d 495, 502-03 (2d Cir. 2004). Plaintiff's claims that McNamara prosecuted claims he knew to be false against Plaintiff and failed to return money taken from him as drug money fall within his prosecutorial functions. Therefore, the Court finds that McNamara is entitled to absolute immunity and recommends that the Complaint be dismissed against McNamara with prejudice.

---

[6] Unless the prosecution was ultimately terminated in Plaintiff's favor, he would have no § 1983 claim for malicious prosecution. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 114 (2d Cir. 1995) (an essential element of a malicious prosecution claim is that the prior criminal action be terminated in plaintiff's favor).

**D.**     **Public Defender Cory A. Zennamo**

Plaintiff claims that public defender Cory A. Zennamo sold out to the District Attorney by not allowing Plaintiff to look at paperwork the public defender had received from the District Attorney and telling the District Attorney Plaintiff would "throw" a non-existent lawsuit against him in exchange for a plea agreement.  (Dkt. No. 1 at 16, 23.)  Plaintiff has also alleged that Zennamo failed to come to him about anything, did not tell Plaintiff he was going to investigate the case against him or the video camera, did not care about the false crime case against Plaintiff, abandoned him the entire time, and lied to Plaintiff about everything he did to him.  *Id*. at 23-24.

42 U.S.C. § 1983 provides in relevant part that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must allege that the challenged conduct (1) was "committed by a person acting under color of state law," and (2) "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

It is well settled that "the under-color-of-state-law element of § 1983 excludes from its

reach merely private conduct, no matter how discriminatory or wrongful."[7] *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted). A plaintiff must therefore allege facts showing that a defendant was either a state actor or a private party acting under color of state law. *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). Private actors have been found to engage in "state action" when they are "willful participant[s] in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (citing *United States v. Price*, 383 U.S. 787, 794 (1966)).

Private attorneys like Zennamo, whether court appointed or privately retained, are generally not liable under § 1983. *See Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983.") (citation omitted); *accord Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (public defender not acting under color of state law when performing attorney's traditional functions as defense counsel). Furthermore, Plaintiff's conclusory allegations regarding Zennamo are not enough to make a plausible showing that the public defender wilfully participated with McNamara in the violation of Plaintiff's constitutional rights. *See Twombly*, 550 U.S. at 570 (conclusory statements without any supporting factual allegations are insufficient to state a claim).

Therefore, the Court recommends that Plaintiff's Complaint be dismissed against

---

[7] A plaintiff is required to allege state action on the part of the defendants in his complaint; and where he fails to do so, a court may dismiss an action under § 1915(e). *See O'Neil v. Bebee*, No. 5:09-CV-1133 (GTS/DEP), 2010 WL 502948, at *5, 2010 U.S. Dist. LEXIS 11639, at *19 (N.D.N.Y. Feb. 10, 2010).

Zennamo for failure to state a claim, and further recommends that it light of his *pro se* status, the dismissal be without prejudice and with leave to amend in the unlikely event Plaintiff is able to allege facts plausibly showing that Zennamo was a wilful participant with a state actor in the violation of his constitutional rights .

### E.      Anthony R. Carvelli

Defendant Anthony R. Carvelli, incorrectly sued as Anthon R. Carvell, is the Commissioner of Finance for Oneida County.[8]  The Complaint is devoid of factual allegations regarding Carvelli.  (Dkt. No. 1.)  Inasmuch as Plaintiff has alleged that the Commissioner of the Utica Police Department, who is not named as a defendant, failed to properly train police officers, failed to investigate the incident with Plaintiff and Paladino involving the video camera, and failed to investigate Paladino as a dirty cop, it is conceivable that Plaintiff mistakenly believes that Carvelli is the Commissioner of the Utica Police Department, rather than the Commissioner of Finance.  *Id*. at 17, 22.

Given the absence of allegations suggesting wrongdoing by Defendant Carvelli, the Court recommends that the Complaint be dismissed as against him, and that in light of Plaintiff's pro se status the dismissal be without prejudice and with leave to amend.

### F.      John Doe, Police Officer

Plaintiff has alleged in his Complaint that

> John Doe is one of the Police officers who testify (sic) against the
> undercover drug officer Peter Paladino why he was taking the stand
> testifying against the Plaintiff on the stand on February 23, 2015 at
> the County of Utica New York courthouse at the Arrangement
> (sic).  Paladino tell them where you get his number from, officer

---

[8]  See http://www.ocgov.net/finance (last visited May 20, 2016).

Paladino Don (?) his head down at like he forget the date, and my
Public Defender had give him the paper work he wrote on me as
the Police Report.

(Dkt. No. 1 at 19.)

The Court finds Plaintiff's allegations regarding Defendant John Doe, Police Officer to be

largely unintelligible. Because the allegations give the Court no meaningful basis for assessing

the sufficiency of Plaintiff's claim against the John Doe Defendant, the Court recommends that

the Complaint be dismissed without prejudice as against John Doe, Police Officer, and that in

light of Plaintiff's pro se status, Plaintiff be granted leave to amend in the event he is able to

plausibly state a cause of action against the John Doe defendant.[9]

### G.    John Doe, Inspector General for the District Attorney

Plaintiff has alleged as to Defendant John Doe, Inspector General for the District

Attorney ("John Doe, Inspector") that

as a Inspector General of the court he should investigated the drug
officer back ground of his drug case and videocorner (sic) of the so
call (sic) crime of selling drugs to the officer, if he was the District
Attorney back (?) cause they [?] work together. Inspector General
come in cort (sic) smiling to do wrong to me to.

(Dkt. No. 1 at 20.)

Prosecutorial immunity also shields an investigator who assists the prosecutor. *See*

*Jackson v. Seewald*, No. 11 Civ. 5826 (LAW)(JCF), 2013 WL 149341, at *7 (S.D.N.Y. Jan. 14,

---

[9] The district court has the power to *sua sponte* dismiss a complaint for failure to comply
with Rule 8(a) of the Federal Rules of Civil Procedure, particularly where it is "so confused,
ambiguous, vague or otherwise unintelligible that its true substance, if any is well disguised."
*See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). The Court recommends dismissal of
the Complaint without prejudice with respect to Defendant John Doe, Police Officer.

2013)[10] (citing *Hill*, 45 F.3d at 660 (absolute immunity applies to "employees who assist [the prosecutor] and act under [the prosecutor's] direction in performing functions closely tied to the judicial process.")). Therefore, John Doe, Inspector, may well be entitled to absolute immunity, although the allegations in the Complaint are inadequate to determine whether John Doe was acting under the District Attorney's direction in performing or failing to perform investigative duties in connection with Plaintiff's arrest and prosecution so as to entitle him to prosecutorial immunity.

Plaintiff has in any event failed to state a claim against John Doe, Investigator. In order to recover money damages in a civil rights action, a plaintiff must plead enough facts to make a plausible showing that a defendant was directly or personally involved in the alleged constitutional violation. *Iqbal*, 556 U.S. at 676; *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). Conclusory allegations without any supporting factual allegations are insufficient to state a claim. *Twombly*, 550 U.S. at 570. Plaintiff's Complaint is devoid of factual allegations plausibly showing John Doe, Inspector's connection to or involvement, if any, with Plaintiff's arrest or any conviction that may ultimately have occurred, and any violation by him of Plaintiff's constitutional rights.

To the extent Plaintiff may be attempting to assert a claim under § 1983 for false arrest or malicious prosecution under the Fourth Amendment against John Doe, Inspector, arising out of Defendants Paladino's actions in connection with Plaintiff's arrest, his conclusory allegations are insufficient to state a claim. Therefore, the Court recommends that the Complaint be dismissed

---

[10] Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

against Defendant John Doe, Inspector without prejudice and with leave to amend in the event Plaintiff is able to state a claim against the John Doe defendant under § 1983 with respect to which he is not entitled to prosecutorial immunity.

## H.    Paladino

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *Sealed Plaintiff*, 537 F.3d at 191, the Court recommends that Plaintiff's § 1983 claim for false arrest be found against Paladino to survive initial review and require a response.[11]  In so recommending, the Court expresses no opinion as to whether the claim can withstand a properly filed motion to dismiss or for summary judgment.

## I.    Amended Complaint

The Court has recommended that certain of Plaintiff's claims be dismissed without prejudice and with leave to amend.  In the event the District Court grants Plaintiff leave to amend with regard to any claims, the Court recommends that Plaintiff be instructed that any amended complaint be a complete pleading that supersedes his original Complaint in all respects (and does not incorporate by reference any portion of his original Complaint); and that he not attempt to reassert any claims that have been dismissed with prejudice by the District Court.  The Court further recommends that Plaintiff be directed to comply in all respects with Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure, which require that the amended complaint contain a short and plain statement of each claim showing that Plaintiff is entitled to relief, and that he

---

[11]  The Court has not found that a claim against Defendant Paladino for malicious prosecution under § 1983 has survived initial review because Plaintiff has not alleged that the criminal prosecution resulting from his arrest, if any, was terminated in his favor.  *See Singer,* 63 F.3d at 114.

state his claims in numbered paragraphs, each limited as far as practical to a single set of circumstances.

      **ACCORDINGLY**, it is hereby

      **ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) be **GRANTED**; and it is

      **RECOMMENDED** that the Complaint (Dkt. No. 1) be dismissed with prejudice against Defendants Dwyer and McNamara on absolute immunity grounds; and it is further

      **RECOMMENDED** that the Complaint be dismissed without prejudice and with leave to amend for failure to state a claim against Defendants Zennamo, Carvelli, John Doe, Police Officer, and John Doe, Inspector General for the District Attorney; and it is further

      **RECOMMENDED** that Defendant Paladino, or his counsel, be required to file a response as provided for in Rule 12 of the Federal Rules of Civil Procedure; and it is further

      **RECOMMENDED** that in the event the District Court allows Plaintiff to file an amended complaint, he be instructed that any amended complaint be a complete pleading that supersedes his original Complaint in all respects (and does not incorporate by reference any portion of his original Complaint); and that he not attempt to reassert any claims that have been dismissed with prejudice by the District Court. The Court further recommends that Plaintiff be directed to comply in all respects with Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure, which require, inter alia, that the amended complaint contain a short and plain statement of each claim showing that Plaintiff is entitled to relief, and that he state his claims in numbered paragraphs, each limited as far as practical to a single set of circumstances.

      **ORDERED**, that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with

the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: May 24, 2016
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2013 WL 149341
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Stuart JACKSON, Plaintiff,

v.

New York County Assistant District Attorney
SEEWALD, New York County Assistant District
Attorney Schulman, New York County Assistant
District Attorney Kitsis, New York County
District Attorney Senior Investigator Michael
Wigdor, New York County District Attorney
Supervising Investigator Walter Alexander,
Chief of the Investigation Bureau of the New
York County District Attorney's Office Joseph
Pennisi, Assistant Chief of the Bureau of the
New York County District Attorney's Office
Terrence, John/Jane Doe Employees of the New
York County District Attorney's Office, Roger
Stavis, David Blitzer, Allison Blitzer, Defendants.

No. 11 Civ. 5826(LAK)(JCF).
|
Jan. 14, 2013.

*REPORT AND RECOMMENDATION*

JAMES C. FRANCIS IV, United States Magistrate Judge.

**\*1** TO THE HONORABLE LEWIS A. KAPLAN, U.S.D.J.
The plaintiff, Stuart Jackson, brought this action under 42
U.S.C. § 1983 and New York state law against employees
and former employees of the New York County District
Attorney's Office (collectively, the "DA defendants") and
three private citizens, alleging violations of his constitutional
rights in connection with his arrest and criminal prosecution.
On May 3, 2012, the Honorable Lewis A. Kaplan,
U.S.D.J., dismissed Mr. Jackson's claims against the private
individuals, David Blitzer, Allison Blitzer, and Roger Stavis.

The DA defendants [1] now move to dismiss the complaint for
failure to prosecute under Rules 41(b) of the Federal Rules
of Civil Procedure and for failure to state a claim under Rule
12(b) (6). For the reasons set forth below, I recommend that
the motion be granted in part and denied in part.

## Background

The facts of the case were set forth in my March 14, 2012
Report and Recommendation (the "March 14 R & R") and
will be summarized and supplemented here. In accordance
with the standard for assessing a motion to dismiss, the
allegations in the complaint are taken as true. *See Ashcroft v.
al-Kidd,* —U.S. —, —, 131 S.Ct. 2074, 2079 (2011).

Mr. Jackson is an attorney who has at various times
represented Stuart Ross. (Complaint ("Compl."), ¶ 22). Mr.
Ross had been estranged from his daughter, Allison Blitzer,
since 2002, but continued to communicate with his son-in-
law, David Blitzer. (Compl ., ¶ 24). Over the years, Mr.
Blitzer had given Mr. Ross money for business ventures and
other purposes. (Compl., ¶¶ 24–26). In December 2007, Mr.
Ross asked Mr. Blitzer for additional funds and indicated that
he would like to reconnect with Ms. Blitzer and their children
—his grandchildren. (Compl., ¶ 27). After some back and
forth, Mr. Blitzer eventually decided to stop giving Mr. Ross
money. (Compl., ¶¶ 27–29).

In June 2008, the plaintiff met with Mr. Blitzer in London
at Mr. Ross' request. (Compl., ¶ 30). At the meeting, Mr.
Jackson conveyed Mr. Ross' message that he was willing to
enter into a consent decree and agree not to petition a court to
seek visitation with his grandchildren. (Compl., ¶¶ 31, 34).

When Mr. Jackson returned to New York, he spoke with
Mr. Blitzer on the phone and suggested that Mr. Blitzer
have his lawyer call to discuss a proposed consent decree.
(Compl., ¶ 35). On July 30, 2008, Mr. Blitzer's attorney,
Roger Stavis, contacted the plaintiff to ask what Mr. Ross
wanted in exchange for giving up his visitation rights and
to have Mr. Ross stop "harassing" the Blitzers. (Compl .,
¶¶ 36, 61). The plaintiff replied that he was unaware of any
harassment by his client. (Compl., ¶¶ 36, 61). He called Mr.
Ross, who denied any harassment and stated that in exchange
for giving up his visitation rights, he wanted $ 5.5 million
and would also promise not to call Mr. Blitzer at work or
anyone else at the Blackstone Group ("Blackstone"), where
Mr. Blitzer was employed. (Compl., ¶¶ 37, 61). Mr. Jackson
conveyed Mr. Ross' demand to Mr. Stavis telephonically
(Compl., ¶ 62; Trial Testimony of Roger Stavis ("Stavis Trial
Test."), attached as Exh. 3 to Compl., at 474–75, 478), and
Mr. Stavis memorialized it in a letter (Compl., ¶¶ 37, 63;
Stavis Trial Test. at 479). When Mr. Ross saw the letter, he
informed the plaintiff that he wanted $5.5 million to waive
his visitation rights and another $5.5 million to stop calling

Mr. Blitzer or anyone else at Blackstone. (Compl., ¶ 37). Mr. Jackson related this to Mr. Stavis. (Compl., ¶¶ 37, 64).

**\*2** The next day, Mr. Stavis received a package from Mr. Blitzer that contained printouts of e-mails between Mr. Ross and Mr. Blitzer and tapes of voice-mails left by Mr. Ross. (Compl., ¶ 40; Stavis Trial Test. at 493). According to Mr. Stavis' testimony, after reading the e-mails and listening to the tapes, he concluded that there was a threat to the safety of the Blitzer family (Stavis Trial Test. at 494–95), so he contacted New York County Assistant District Attorney Michelle Schulman and played her some of Mr. Ross' voice-mails (Compl., ¶ 40; Stavis Trial Test. at 497–98).

On August 12, 2008, Mr. Stavis accompanied Mr. and Ms. Blitzer to a meeting at the New York County District Attorney's Office ("DANY"). (Compl., ¶ 41). Also present at the meeting were ADA Schulman, Assistant District Attorney Andrew Seewald, DANY Senior Investigator Michael Wigdor, and another individual from DANY. (Compl., ¶ 41; Stavis Trial Test. 499; Grand Jury Testimony of Roger Stavis ("Stavis G.J. Test."), attached as Exh. 2 to Compl., at 394). During the meeting, "a course of action [ ] was planned." (Compl., ¶ 42; Stavis G.J. Test. at 393). The plan was for Mr. Stavis to record his telephone conversations with Mr. Jackson (Stavis Trial Test. at 515), and to arrange a meeting with Mr. Ross and Mr. Jackson (Compl., ¶ 42). According to Mr. Stavis, the purpose of the meeting was to make clear to Mr. Ross that his actions were criminal and give him an opportunity to cease and, failing that, to obtain evidence to be used against him. (Compl., ¶ 42; Stavis G.J. Test. at 394–95). According to Mr. Jackson, the purpose of the meeting was to set him up. (Compl., ¶ 44). Mr. Jackson claims that Mr. Blitzer harbored ill-will toward him because of a transaction that occurred in 2000, in which he held money of Mr. Blitzer's in escrow and, pursuant to the escrow agreement, returned the money to Mr. Ross rather than to Mr. Blitzer. (Compl., ¶ 47).

Mr. Stavis, with the assistance of Investigator Wigdor, recorded his telephonic conversations with Mr. Jackson. (Compl., ¶ 48; Stavis Trial Test. at 514). A meeting among Mr. Blitzer, Mr. Stavis, Mr. Ross, and the plaintiff was arranged for August 21, 2008. (Compl., ¶ 49). Before that meeting, Investigator Wigdor and others from DANY went to Mr. Stavis' office and gave Mr. Blitzer and Mr. Stavis recording devices. (Compl., ¶ 49; Stavis Trial Test. at 525). In addition, the DA defendants instructed Mr. Blitzer and Mr. Stavis on how to conduct themselves during the meeting.

(Compl., ¶ 50). According to Mr. Stavis, ADA Seewald said that "this was an opportunity [ ] to see if there was going to be a criminal case to be made or not." (Stavis Trial Test. at 526).

At some point after the August 21 meeting, Investigator Wigdor asked the plaintiff to come to the DANY office, and when Mr. Jackson voluntarily presented himself, ADA Seewald informed him that he was being arrested. (Compl., ¶ 56).

**\*3** Thereafter, ADA Seewald presented the case to the grand jury, calling Mr. Stavis as his key witness. (Compl., ¶ 60). According to the plaintiff, the prosecution's theory was that he, acting in concert with Mr. Ross, caused Mr. Blitzer to believe that if he did not pay money to Mr. Ross, Mr. Jackson or someone else would harm Mr. Blitzer's business and personal relationships. (Compl., ¶ 58). Mr. Jackson claims that Mr. Stavis, with the assistance of ADA Seewald and under the supervision of Assistant District Attorney Michael Kitsis, provided false testimony to the grand jury which the DA defendants did not correct. (Compl., ¶¶ 61–66). In addition, he alleges that ADA Seewald provided "poisoned and tainted" interpretation of the plaintiff's exculpatory statements and failed to present exculpatory evidence to the grand jury. (Compl., ¶¶ 69–72).

The plaintiff was indicted for attempted grand larceny in the second degree and grand larceny in the third degree. (Compl., ¶ 57). He was acquitted of all charges at trial. (Compl., ¶ 111)

On August 19, 2011, Mr. Jackson filed the instant complaint. He asserts claims of constitutional violations in the nature of (1) false arrest, (2) denial of due process in connection with the investigation and presentation of his criminal case, (3) malicious prosecution, (4) conspiracy to deny his constitutional rights, (5) failure to intercede, and (6) abuse of process. In addition, he alleges a state law malicious prosecution claim.

## Discussion

The DA defendants have moved to dismiss the complaint on the grounds that (1) the plaintiff has failed to prosecute the case diligently; (2) he has failed to allege facts sufficient to support a claim; (3) the DA defendants are protected by absolute prosecutorial immunity; and (4) they are protected by qualified immunity. (Def. Memo. at I).

### A. *Failure to Prosecute*

Rule 41(b) of the Federal Rules of Civil Procedure provides in pertinent part that "[i]f the plaintiff fails to prosecute ... a defendant may move to dismiss the action or any claim against it." Fed.R.Civ.P. 41(b); *see also Link v. Wabash Railroad Co.,* 370 U.S. 626, 629 (1962) ("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot be seriously doubted." (footnote omitted)). Because dismissal is a harsh remedy, it is only appropriate in extreme circumstances. *Spencer v. Doe,* 139 F.3d 107, 112 (2d Cir.1998); *Peart v. City of New York,* 992 F.2d 458, 461 (2d Cir.1993).

In determining whether dismissal is appropriate, courts consider whether

> (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against [the] plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.

**\*4** *Yadav v. Brookhaven National Laboratory,* No. 11–3054, 2012 WL 5416606, at \*1 (2d Cir. Nov. 7, 2012) (citing *Lewis v. Rawson,* 564 F.3d 569, 576 (2d Cir.2009)). No one factor is dispositive. *Id.*

The DA defendants contend that the plaintiff's failure to execute a waiver pursuant to section 160.50 of the New York Criminal Procedure Law ("CPL")[2] for eight months warrants dismissal. (Def. Memo. at 4). The plaintiff argues that he was waiting for the DA defendants to provide him with the necessary authorization forms. (Memorandum of Law in Support of Plaintiff's Opposition to District Attorney's Motion to Dismiss ("Pl.Memo.") at 2). Notably, the DA defendants do not claim that the plaintiff failed to comply with a court order or any rule, nor could they. This weighs against dismissal. *See Platinum Funding Corp. v. Bosselli Studio Ltd.,* 335 F. App'x 120, 122 (2d Cir.2009) (remanding case dismissed for failure to prosecute because no record that plaintiff violated or disobeyed court order). Moreover, this case has not been dormant. Since I granted the DA defendants an extension to answer the complaint until after the plaintiff executed a CPL § 160.50 waiver, Mr. Jackson has

timely responded to the private citizen defendants' motions to dismiss and has filed objections to my March 14 Report and Recommendation. Mr. Jackson also timely responded to the instant motion to dismiss. Therefore, the plaintiff has not failed to prosecute his case or otherwise caused delay.

As to the second factor, Mr. Jackson has not received any notice that he was in jeopardy of having his case terminated for not executing the waiver. This factor strongly counsels against dismissal. *See, e.g., Coats v. Department of Veteran Affairs,* 268 F. App'x 125, 127 (2d Cir.2008) (holding dismissal was abuse of discretion because, among other things, no evidence plaintiff was warned dismissal was being contemplated); *Nita v. Connecticut Department of Environmental Protection,* 16 F.3d 482, 487 (2d Cir.1994) (same).

The DA defendants contend that in the absence of any excuse for the delay, prejudice may be assumed and that, in fact, they have been prejudiced because defendant ADA Schulman has since left the office and moved to Africa. (Def. Memo. at 5). However, since the delay, if any, in this case is not a result of Mr. Jackson's disregard of a specific court order, "the delay is less inexcusable ." *See United States ex rel. Pervez v. Maimonides Medical Center,* No. 06 Civ. 4989, 2010 WL 890236, at \*4 (S.D.N.Y. March 9, 2010). Moreover, the plaintiff contends that the DA defendants never contacted him directly with a request for the waiver. (Pl. Memo. at 5). The first time plaintiff's counsel and defense counsel spoke since the DA defendants were granted an extension, defense counsel raised the waiver issue and the plaintiff executed the waiver in less than two weeks. (Memorandum Endorsement dated July 17, 2012, at 1).

A balancing between the Court's interest in efficient adjudication and the plaintiff's interest in having his day in court favors permitting the case to proceed. As noted above, the case has advanced on other fronts notwithstanding the waiver issue.

**\*5** Finally, since Mr. Jackson promptly responded and executed the waiver when defense counsel raised this issue, there is no reason to believe that dismissal is the only effective sanction available. *See United States ex rel. Pervez,* 2010 WL 890236, at \*5 (noting since plaintiff promptly responded to court's only order issued in response to delay, no reason to suspect plaintiff would not be responsive to lesser sanctions or court order).

Having considered each of the relevant factors, I recommend that the complaint not be dismissed because of a failure to prosecute.

### B. *Failure to State a Claim*

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus,* 551 U .S. 89, 93–94 (2007) (per curiam); *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 110–11 (2d Cir.2010). A complaint need not make " 'detailed factual allegations,' " but it must contain more than mere " 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the minimum standard. *Id.* at 678. In ruling on a motion to dismiss, the court's role " 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd.,* 580 F.Supp.2d 321, 327 (S.D.N.Y.2008) (quoting *Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York,* 375 F.3d 168, 176 (2d Cir.2004)).

On a motion to dismiss, the court is generally limited to reviewing the allegations in the complaint and documents attached to it or incorporated by reference. *See Gryl ex rel. Shire Pharmaceuticals Group PLC v. Shire Pharmaceuticals Group PLC,* 298 F.3d 136, 140 (2d Cir.2002). A court may also consider matters of public record, including arrest reports, indictments, and criminal disposition data, *Vasquez v. City of New York,* No. 99 Civ. 4606, 2000 WL 869492, at *1 n. 1 (S.D.N.Y. June 29, 2000), as well as transcripts of court proceedings and judicial opinions, *Hayes v. Perotta,* 751 F.Supp.2d 597, 599 (S.D.N.Y.2010).

#### 1. *Absolute Immunity*

As a threshold matter, the DA defendants argue that New York County Assistant District Attorneys Kitsis, Schulman, and Seewald (collectively, the "ADA defendants") are entitled to absolute immunity from liability for actions undertaken in their roles as "advocates." (Def. Memo. at 7). The plaintiff claims that ADA defendants were not acting as

advocates or officers of the court, but were instead engaging in investigative or administrative tasks. (Pl. Memo. at 6–7).

**\*6** Prosecutors are entitled to absolute immunity for "advocacy conduct that is 'intimately associated with the judicial phase of the criminal process.' " This immunity attaches to conduct in court, as well as conduct 'preliminary to the initiation of a prosecution and actions apart from the courtroom.' " *Giraldo v. Kessler,* 694 F.3d 161, 165 (2d Cir.2012) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430 & 431 n. 33 (1976)). However, when a prosecutor acts outside his role as an advocate or beyond the scope of his authority, absolute immunity does not apply. *See Van de Kamp v. Goldstein,* 555 U.S. 335, 342 (2009); *Buckley v. Fitsimmons,* 509 U.S. 259, 273 (1993); *Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990). For example, where a prosecutor acts in an investigatory or administrative capacity, absolute immunity is not available. *See Mitchell v. Forsyth,* 472 U.S. 511, 513, 520 (1985) (holding Attorney General not absolutely immune for authorizing warrantless wiretap); *Buckley,* 509 U.S. at 262–63, 276 (denying prosecutors absolute immunity for fabricating evidence "during the early stages of the investigation").

In determining whether a prosecutor enjoys absolute immunity, courts "employ a 'functional' approach, looking at 'the nature of the function performed, not the identity of the actor who performed it.' " *Mangiafico v. Blumenthal,* 471 F.3d 391, 394 (2d Cir.2006) (quoting *Forrester v. White,* 484 U.S. 219, 229 (1988)). The relevant question is "whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor." *Giraldo,* 694 F.3d at 166. Moreover, as long as the nature of the action is prosecutorial, "absolute immunity applies to protect the prosecutor even in the face of a complaint's allegation of malicious or corrupt intent behind the acts." *Id.; see also Buckley,* 509 U.S. at 271–72 (noting that "harm that the conduct may have caused or the question whether it was lawful" is irrelevant to whether absolute immunity applies); *Pinaud v. County of Suffolk,* 52 F.3d 1139, 1150 (2d Cir.1995) ("[T]he extent of [prosecutorial] immunity always depends upon the nature of the activity in question, and not upon how wrongly the particular actors may have performed that activity in a specific instance.").

"The line between a prosecutor's advocacy and investigating roles might sometimes be difficult to draw." *Zahrey v. Coffey,* 221 F.3d 342, 347 (2d Cir.2000). In *Zahrey,* the Second Circuit noted that "a prosecutor's conduct prior to

the establishment of probable cause should be considered investigative: 'A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.' " *Id.* at 347 n. 2 (quoting *Buckley,* 509 U.S. at 274); *see also Hill v. City of New York,* 45 F.3d 653, 661 (2d Cir.1995) ("Before any formal legal proceeding has begun and before there is probable cause to arrest, it follows that a prosecutor receives only qualified immunity for his acts."). "[T]he mere fact that a prosecutor might later convene a grand jury and obtain an indictment does not automatically serve to cloak his prior investigatory actions with the protection of absolute immunity." *Anilao v. Spota,* 774 F.Supp.2d 457, 477 (E.D.N.Y.2011). "The burden is on the party asserting absolute immunity." *Bertuglia v. City of New York,* 839 F.Supp.2d 703, 731 (S.D.N.Y.2012).

**\*7** Applying the functional test to the allegations in the complaint, the ADA defendants are entitled to absolute immunity for allegations related to their decision to initiate prosecution of Mr. Jackson as well as their presentation of evidence before the grand jury and at trial. *See Kent v. Cardone,* 404 F. App'x 540, 542–43 (2d Cir.2011) (holding prosecutor entitled to absolute immunity for " 'initiating a prosecution,' as well as for his performance of tasks as an advocate in the conduct of the prosecution." (internal citations omitted)). This is true notwithstanding Mr. Jackson's allegations that there was no probable cause to initiate prosecution against him, *see Buckley,* 509 U.S. at 274 n. 5 (acknowledging that absolute immunity shields "a prosecutor's decision to bring an indictment, whether he has probable cause or not"), or that the ADA defendants presented false evidence and withheld exculpatory evidence from the grand jury, *see Hill,* 45 F.3d at 661 (prosecutor's alleged acts of "conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury" were "clearly protected by the doctrine of absolute immunity"); *Kent,* 404 F. App'x at 544 (noting prosecutors are entitled to immunity for their conduct in front of grand jury even if it is "wildly inappropriate and may furnish grounds for a finding of prosecutorial misconduct"), or at trial, *see Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994) (prosecutor entitled to absolute immunity even if he is alleged to have conspired to present false evidence at trial). *See also Anilao* 774 F.Supp.2d at 479 (collecting cases). Therefore, to the extent that the plaintiff's claims are based upon the ADA defendants' initiation of the prosecution against him or their conduct in front of the grand jury or at trial, the ADA defendants are absolutely immune from liability on these claims.

Absolute immunity also shields the investigator defendants, *see Hill,* 45 F.3d at 660 (absolute immunity applies to "employees who assist [the prosecutor] and act under [the prosecutor]'s direction in performing functions closely tied to the judicial process"), as well as DA defendants who acted in a supervisory role, *see Anilao,* 774 F.Supp.2d at 481 n. 17 (noting "absolute immunity protection shields the action of both [a] defendant [ ] who presented the case to the Grand Jury, and [a] defendant [ ] who acted as [the] supervisor regarding the initiation of the prosecution and the presentation to the Grand Jury.").

Accordingly, I recommend dismissing the malicious prosecution claims in their entirety. *See Rehberg v. Paulk,* —— U.S. ——, ——, 132 S.Ct. 1497, 1504 (2012) (prosecutors are absolutely immune from claims for malicious prosecution); *Hill,* 45 F.3d at 661 ("With respect to ... malicious prosecution, it has long been settled that prosecutors are entitled to immunity from § 1983 liability for initiating a prosecution."). This includes the malicious prosecution claims brought under both federal and state law. *Moye v. City of New York,* No. 11 Civ. 316, 2012 WL 2569085, at \*7 & n. 5 (S.D.N.Y. July 3, 2012) (dismissing both federal and state law claims alleging malicious prosecution, noting "[a]bsolute immunity is a defense not only to Section 1983 claims but related state law claims").

**\*8** On the other hand, the DA defendants' alleged conduct before and during the August 21 meeting was not advocacy. The DA defendants argue that "ADA Schulman's review of evidence forwarded to her by [Mr. Stavis] ... is precisely the type of conducted [sic] expected of a prosecutor." (Def. Memo. at 9). They analogize her action to "the professional evaluation of the evidence assembled by the police" for which she would be entitled to absolute immunity. (Def. Memo. at 9). However, according to the complaint, the DA defendants did more than simply evaluate already assembled evidence. They met with the private citizen defendants and planned a "course of action" to obtain incriminating evidence and "set up Mr. Jackson." (Compl., ¶¶ 41–42, 44). They recorded Mr. Stavis' telephone conversation with Mr. Jackson, conducted investigations at Mr. Jackson's office (Compl., ¶ 48), gave advice to Mr. Stavis and Mr. Blitzer on how to conduct themselves during the August 21 meeting, and recorded the meeting. (Compl., ¶¶ 49–50). These are investigative acts that would normally be performed by the police and for which the DA defendants are not entitled to prosecutorial immunity. *Buckley,* 509 U.S. at 273 ("When a prosecutor performs the

investigative function normally performed by a detective or police office, it is neither appropriate nor justifiable that, for the same act, immunity should protect the [prosecutor] and not the other." (internal quotation marks omitted)); *Green v. County of Monroe,* 423 F. App'x 98, 99–100 (2d Cir.2011) (prosecutorial immunity does not apply where plaintiff claim prosecutors conducted own investigation); *Peters v. City of Buffalo,* 848 F.Supp.2d 378, 386 (W.D.N.Y.2012) (prosecutorial immunity does not apply when prosecutors are alleged to have "actually dictated what evidence was collected"). Since neither the DA defendants nor the plaintiff claims that the police were involved in this investigation, it is reasonable to infer that not only were the DA defendants involved in the investigation, they were also "spearheading" it. *Anilao,* 774 F.Supp.2d at 482.

Furthermore, these acts are alleged to have occurred before a decision was made to prosecute the plaintiff and before there was probable cause to arrest him. According to Mr. Stavis, ADA Seewald described the August 21 meeting as "an opportunity [ ] to see if there was going to be a criminal case to be made or not." (Stavis Trial Test. at 526). The DA defendants' conduct through the August 21 meeting involved "the detective's role in searching for the clues and corroboration that might give [them] probable cause to recommend that a suspect be arrested." *Buckley,* 509 U.S. at 273. As the Supreme Court explained, "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Id.* at 274 (footnote omitted). Moreover, "[a] prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation' for a possible trial." *Id.* at 276; *see also Zahrey,* 221 F.3d at 353 ("[A] subsequent immunized act of a single official does not break the chain of causation traceable to his initial misconduct occurring in another capacity.").

**\*9** Likewise, the DA defendants are not shielded by prosecutorial immunity for their conduct in arresting Mr. Jackson. Since arrests " 'are normally police functions, [ ] they do not become prosecutorial functions merely because a prosecutor has chosen to participate.' " *Day v. Morgenthau,* 909 F.2d 75, 77–78 (2d Cir.1990) (quoting *Robison v. Via,* 821 F.2d 913, 918 (2d Cir.1987)).

In sum, I recommend that the DA defendants' motion be granted to the extent that they are entitled to absolute immunity for their conduct in initiating the prosecution of the plaintiff, at the grand jury presentment, and at trial. On the other hand, I recommend denying the motion insofar as it relates to alleged misconduct leading up to and including Mr. Jackson's arrest.

*2. Qualified Immunity/Merits*

The DA defendants argue, in the alternative, that even if they were acting in an investigatory capacity, they are entitled to qualified immunity. (Def. Memo. at 11–13). "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards,* ––– U.S. ––––, ––––, 132 S.Ct. 2088, 2093 (2012). As a threshold matter, courts often determine first whether the facts, when viewed in the light most favorable to the party professing an injury, "show the officer's conduct violated a constitutional right." *Saucier v. Katz,* 533 U.S. 194, 201 (2001). If so, the court then examines whether "the right was clearly established." *Id.* On the other hand, "[i]f no constitutional rights would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.; cf. Pearson v. Callahan,* 555 U.S. 223, 236 (2009) (holding that court may reverse order of analysis).

"[A] defendant presenting an immunity defense on a Rule 12(b) (6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir.2004); *see McCray v. City of New York,* Nos. 03 Civ. 9685, 03 Civ. 9974, 03 Civ. 10080, 2007 WL 4352748, at * 18 (S.D.N.Y. Dec. 11, 2007) ("A defendant asserting a qualified immunity defense at the 12(b)(6) stage ... faces a formidable hurdle." (internal quotation marks omitted)). The facts supporting the qualified immunity defense must not only be clear from the face of the complaint but it must "appear[ ] beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna,* 386 F.3d at 436 (internal quotation marks omitted).

*a. False Arrest*

The Fourth Amendment protects the right to remain free from unreasonable searches and seizures, including the right to be arrested absent probable cause. *Jaegly v. Couch,* 439 F.3d 149, 151 (2d Cir.2006). "In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred." *Id.*

(internal quotation marks omitted). Here, the arrest occurred in New York, and under New York law, the elements of false arrest are that: " '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged.' " *Ackerson v. City of White Plains,* 702F.3d 15, ——, 2012 WL 5951836, at *3 (2d Cir.2012) (quoting *Broughton v. State of New York,* 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93 (1975)). A confinement is privileged if it is "pursuant to a warrant or with probable cause or immunity protection." *Curley v.. AMR Corp.,* 153 F.3d 5, 13 (2d Cir.1998).

**\*10** The existence of probable cause "is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (internal quotation marks and citation omitted); *see also Ackerson,* 2012 WL 5951836, at *3. Probable cause exists if there is "a reasonable belief that a person has committed a crime." *Williams v. City of New York,* No. 10 Civ. 9594, 2012 WL 547508, at *6 (S.D.N.Y. Feb. 17, 2012) (citing *Mejia v. City of New York,* 119 F.Supp.2d 232, 253 (E.D.N.Y.2000)). The defendants bear the burden of proving probable cause existed for the arrest. *Savino v. City of New York,* 331 F.3d 63, 76 (2d Cir.2003). Even when there is no probable cause for an arrest, "[a]n officer who makes an arrest ... is entitled to qualified immunity if officers of reasonable competence in the same circumstances and with the same knowledge could disagree whether probable cause existed." *Espinoza v. City of New York,* No. 11 Civ. 2108, 2012 WL 4761565, at *4 (S.D.N.Y. Aug. 3, 2012).

According to the plaintiff, ADA Seewald arrested him (Compl., ¶ 56), "without any legal basis or reasonable or probable cause" (Compl., ¶ 83), and "before any formal proceeding had begun" (Compl., ¶ 84). However, the plaintiff also asserts that the DA defendants "issued legal process" to place him under arrest. (Compl., ¶ 141). Under New York law " 'where the illegal imprisonment is pursuant to legal process which is valid on its face, the State cannot be held liable in damages for wrongful detention' " unless the court issuing the process lacked jurisdiction. *Collins v. State,* 69 A.D.3d 46, 51, 887 N.Y.S.2d 400, 404 (4th Dep't 2009) (quoting *Harty v. State of New York,* 29 A.D.2d 243, 244, 287 N.Y.S.2d. 306, 307 (3d Dep't 1968)).

The complaint contains no information as to what legal process was used to effect Mr. Jackson's arrest. In my March 14 Report and Recommendation, I note that the plaintiff has

not overcome the presumption of probable cause because he contends that he was arrested pursuant to legal process. (March 14 R & R at 30 & n. 11). "It is well-established that where an individual's arrest is effectuated pursuant to a warrant there can be no claim for false arrest." *Williams v. Young,* 769 F.Supp.2d 594, 602 (S.D.N.Y.2011). However, the DA defendants do not claim that Mr. Jackson was arrested pursuant to a warrant. Rather, they contend probable cause existed for his arrest because the grand jury later indicted him based on the same evidence they had when they arrested him. (Def. Memo. at 12–13). Under New York law, "the presumption of probable cause arising from an indictment 'applies only in causes of action for malicious prosecution and is totally misplaced when applied in false [arrest] actions." *Savino,* 331 F.3d at 75 (alteration in original) (quoting *Broughton,* 37 N.Y.2d at 456, 373 N.Y.S.2d at 93). Furthermore, under New York law, "*[a]fter the fact* judicial participation cannot validate unlawful arrest; only probable cause existing at the time of arrest will validate the arrest." *Blasini v. City of New York,* No. 11 Civ. 3022, 2011 WL 6224605, at *4 (S.D.N.Y. Dec. 14, 2011) (alteration in original) (quoting *Broughton,* 37 N.Y.2d at 458, 373 N.Y.S.2d at 95); *see, e.g., Williams v. City of New York,* 40 A.D.3d 847, 850, 835 N.Y.S.2d 717, 720 (2d Dep't 2007) (holding post-arrest indictment did not create presumption of probable cause for false arrest claim).

**\*11** "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers or may require a trial if the facts are in dispute." *Weyant,* 101 F.3d at 852 (internal citations omitted). Here, there are disputes both as to the events leading up to the plaintiff's arrest and as to the knowledge ADA Seewald had when he executed the arrest.

Accordingly, there is insufficient information at this stage to determine whether the DA defendants are entitled to qualified immunity. " 'There is no question that the right[ ] ... to be free from false arrest [was] 'clearly established at the time of the incident.' " *Curry v. City of Syracuse,* 316 F.3d 324, 336 n. 9 (2d Cir.2003) (alteration in original) (quoting *Lennon v. Miller,* 66 F.3d 416, 423 (2d Cir.1995)). According to the complaint, the plaintiff was completely unaware of Mr. Ross' conduct toward the Blitzer family (Compl., ¶¶ 46, 54), and, during the August 21 meeting, he was merely helping Mr. Ross reach a lawful agreement and was in no way assisting him in extorting money from Mr. Blitzer (Compl., ¶ 52). "While the facts that may be established through

discovery might lead to the conclusion that the individual defendants possessed actual or arguable probable cause to arrest [p]laintiff and commence his prosecution on certain crimes," at this stage those facts are not yet known. *Bernstein v. City of New York,* No. 06 Civ. 895, 2007 WL 1573910, at *5 (S.D.N.Y. May 24, 2007) (internal quotation marks and alteration omitted); *see Williams v. City of Mount Vernon,* 428 F.Supp.2d 146, 156 (S.D.N.Y.2006). Accordingly, the false arrest claim should not be dismissed.

### b. *Due Process Claim for Failure to Investigate, Fabrication of Evidence, and Withholding of Exculpatory Evidence*

"[T]here is a constitutional right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity, at least where the officer foresees that he himself will use the evidence with a resulting deprivation of liberty." *Zahrey,* 221 F.3d at 344. That is, " 'the investigatory act of obtaining evidence known to be false is not itself a violation of a constitutional right,' but [ ] a plaintiff may state a claim against a prosecutor 'where a deprivation of liberty *results* from the initial act of obtaining evidence known to be false, at least ... where the same person who fabricated the evidence forseeably used it.' " *Watson v. Grady,* No. 09 Civ. 3055, 2010 WL 3835047, at *17 (S.D.N.Y. Sept. 30, 2010) (second alteration in original) (quoting *Zahrey,* 221 F .3d at 354). A fabrication of evidence claim cannot be defeated by demonstration of probable cause. *Deskovic v. City of Peekskill,* 894 F.Supp.2d 443, ——, 2012 WL 4435316, at *5 (S.D.N.Y.2012).

The DA defendants argue that the plaintiff fails to allege specific conduct taken by them that would constitute fabrication of false or misleading evidence or suppression of potentially exculpatory evidence. (Def. Memo. at 7). According to the complaint, no incriminating evidence was uncovered during the DA defendants' investigation of Mr. Jackson. (Compl., ¶¶ 52–53, 55). Rather the alleged fabrication of false or misleading evidence occurred during ADA Seewald's examination of Mr. Stavis at the grand jury presentment (Compl., ¶¶ 61–62, 64–66, 68–70) and through ADA Seewald's own statements in the grand jury (Compl., ¶¶ 69–70). These are acts for which the DA defendants are entitled to absolute immunity. *See Dory,* 25 F.3d at 83. In addition, the Second Circuit "has specifically held that a prosecutor is immune from § 1983 liability for withholding exculpatory evidence from a grand jury." *Lawlor v. Connelly,* 471 F. App'x 64, 65 (2d Cir.2012); *see also Hill,* 45 F.3d at 661 (holding prosecutor's alleged act of "conspiring to

present falsified evidence to, and to withhold exculpatory evidence from, a grand jury" was "clearly protected by the doctrine of absolute immunity."). Accordingly, the failure to present alleged exculpatory evidence, namely an unrelated civil lawsuit filed by Mr. Blitzer against Mr. Ross in which Mr. Jackson is not named as a defendant (Compl., ¶¶ 71, 95), is protected by prosecutorial immunity. Mr. Jackson also claims that the DA defendants failed to properly investigate Mr. and Ms. Blitzer as well as Mr. Stavis before arresting him. (Compl., ¶¶ 93–94). The alleged exculpatory evidence that the DA defendant failed to uncover was related to ill will Mr. Blitzer supposedly harbored towards Mr. Jackson for a transaction that occurred in 2000 about which the DA defendants allegedly knew. (Compl., ¶ 47). This is also a claim about the DA defendants' decision not to present evidence to the grand jury for which the DA defendants are absolutely immune. Since the plaintiff has failed to allege any conduct by the DA defendants for which they are not absolute immune that would form the basis for this cause of action, I recommend dismissing this claim.

### c. *Constitutional Malicious Prosecution*

**\*12** For the reasons discussed above, the DA defendants are absolutely immune from any malicious prosecution claim, and this claim should be dismissed.

### d. *Conspiracy*

To succeed on a conspiracy claim under § 1983, a plaintiff must allege "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999); *see Ciambriello v. County of Nassau,* 292 F.3d 307, 324 (2d Cir.2002). Since a 'violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right,' " when a 'plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights.' " *Kogut v. The County of Nassau,* No. 06 CV 6695, 2009 WL 2413648, at *12 (E.D.N.Y. Aug. 3, 2009) (quoting *Romber v. Morgenthau,* 119 F.Supp.2d 346, 363 (S.D.N.Y.2000)). As discussed in my March 14 Report and Recommendation, the conspiracy alleged in the complaint, even if it met the plausibility standard, would fail to state a cause of action because it is, at best, a conspiracy to entrap Mr. Jackson, which is not a cognizable claim under § 1983. (March 14 R & R at 18–20). Moreover, to the extent that the plaintiff is alleging a conspiracy to present false or

misleading evidence to the grand jury, the DA defendants are absolutely immune from liability. *See Pinaud, 52 F.3d at 1148* ("[S]ince absolute immunity covers 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate,' when the underlying activity at issue is covered by absolute immunity, the 'plaintiff derives no benefit from alleging a conspiracy.' " (alteration in original) (quoting *Hill, 45 F.3d at 659 n. 2*)) (collecting cases).

To the extent that Mr. Jackson is alleging a conspiracy to falsely arrest him, this claim also fails. A complaint "must present facts tending to show agreement and concerted action. Without a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy." *Fisk v. Letterman, 401 F.Supp.2d 362, 376 (S.D.N.Y.2005)* (internal citation and quotation marks omitted). In other words, a plaintiff must " 'provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.' " *Allen v. Norman, No. 08 Civ. 6041, 2012 WL 3525584, at *14 (S.D.N.Y. July 23, 2012)* (quoting *Webb v. Goord, 340 F.3d 105, 110 (2d Cir.2003)); see also Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir.2012)* (holding that plaintiff's allegations of conspiracy were "baseless" where plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the conspirators' "). Mr. Jackson has not set forth any non-conclusory allegations or offered any facts that would suggest an agreement was reached among the defendants to falsely arrest him. Moreover, all of the alleged acts in furtherance of the conspiracy relate either to a conspiracy to entrap Mr. Jackson or to a conspiracy to present false or misleading evidence to the grand jury; yet as discussed above, in both instances the predicate acts are not actionable. Accordingly, the plaintiff's conspiracy claim should be dismissed.

### e. *Failure to Intercede*

**\*13** Failure to intercede to prevent an unlawful arrest can be grounds for § 1983 liability. *Ricciuti v. New York City Transit Authority, 124 F.3d 123, 129 (2d Cir.1997); Anderson v. Braden, 17 F.3d 552, 557 (2d Cir.1994).* The duty to intervene in the false arrest context is described as follows: " '[A]n officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know .... that a citizen has been unjustifiably arrested.' " *Wilson v. City of New York, No. 06 CV 229, 2010 WL 3585906, at *8 (E.D.N.Y. Sept. 7, 2010)* (alteration in original) (quoting *Anderson, 17 F.3d at 557*). For liability to attach there must have

been " 'a realistic opportunity to intervene to prevent harm from occurring.' " *Id.* (quoting *Anderson, 17 F.3d at 557); Henry–Lee v. City of New York, 746 F.Supp.2d 546, 565 (S.D.N.Y.2012).* In addition, "the failure to intercede must be under circumstances making it objectively unreasonable for [an officer] to believe that his fellow officers' conduct did not violate those rights." *Gomez v. Village of Sleepy Hollow, No. 07 Civ. 9296, 2011 WL 2652439, at *6 (S.D.N.Y. July 6, 2011)* (citing *Anderson v. Creighton, 483 U.S. 635, 641 (1987)).*

The plaintiff makes conclusory allegations that all of the DA defendants and others yet unknown had the opportunity to intercede to prevent his arrest but failed to do so. (Compl., ¶ 135). He has not made any specific allegations that any of the DA defendants, except for the arresting defendants, were present at the time of his arrest, much less had a realistic opportunity to intervene. *See Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir.2001)* (dismissing failure to intercede claim because no evidence defendant was aware of or had opportunity to intercede). Therefore, this claim should be dismissed. Since I recommend dismissing Mr. Jackson's malicious prosecution and due process claims, the claims for failure to intercede to prevent those acts should also be dismissed. *See Henry–Lee, 746 F.Supp.2d at 566* ("An underlying constitutional violation is an essential element of a failure to intercede claim under § 1983.").

### f. *Malicious Abuse of Process*

A claim for malicious abuse process lies when a defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Shain v. Ellison, 273 F.3d 56, 68 (2d Cir.2001).*

"[T]he gist of abuse of process is the improper use of process after it is regularly issued." *Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir.1994)* (internal quotation marks omitted); *see also Gillman v. Marsh and McLennan Companies, Inc., 868 F.Supp.2d 118, 131 (S.D.N.Y.2012)* (under New York law, "the pursuit of a collateral objective must occur *after* the process is issued; the mere act of issuing process does not give rise to a claim." (internal quotation marks omitted)). In addition, the plaintiff must allege an improper purpose or objective beyond or in addition to his criminal prosecution; an improper motive is insufficient. *Savino, 331 F.3d at 77; Hoffman v. Town of Southampton, 893 F.Supp.2d 438, ––––, 2012 WL 4465779, at *9 (E.D.N.Y.2012)* ( "[T]he

Second Circuit expressly distinguishes between a 'malicious motive' and an 'improper purpose'; only the latter suffices to meet the 'collateral objective' prong of the abuse of process standard."). "Personal animosity is a collateral motive, not a collateral purpose." *Newton v. City of New York,* 566 F.Supp.2d 256, 280 (S.D.N.Y.2008).

 **\*14** The plaintiff contends that the DA defendants issued legal process to place Mr. Jackson under arrest to prevent Mr. Ross from asserting an advice of counsel defense and to appease the private citizen defendants. (Compl., ¶ 142). As discussed in my March 14 Report and Recommendation, Mr. Jackson's arrest was within the intended scope of the process, and the alleged improper objectives were attendant to the arrest, not collateral to it. (March 14 R & R at 42); see *Brandon v. City of New York,* 705 F.Supp.2d 261, 275 (S.D.N.Y.2010) ("If [one] uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of process." (alteration in original) (internal quotation marks omitted)). Moreover, to the extent that Mr. Jackson seeks to hold the DA defendants liable for initiating prosecution against him, the DA defendants are entitled to absolute immunity. *Moye,* 2012 WL 2569085, at *7. Absolute immunity applies regardless of any allegation that the prosecutor's actions were undertaken with an improper state of mind or improper motive. *Shmueli v. City of New York,* 424 F.3d 231, 237 (2d Cir.2005). Accordingly, I recommend dismissing this claim.

### g. State Law Malicious Prosecution Claim

As discussed above, since absolute immunity is a defense not only to § 1983 claims but to related state law claims, I recommend dismissing the state law malicious prosecution claim. See *Moye,* 2012 WL 2569085, at *7 & n. 5.

### 3. Personal Involvement

The DA defendants argue that the complaint does not allege any personal involvement of defendants Kitsis, Pennisi, Wigdor, or Alexander. (Def. Memo. at 7). Personal involvement by the defendant in any alleged constitutional violation is a prerequisite to an award of damages under Section 1983. *Hernandez v. Keane,* 341 F.3d 137, 144– 45 (2d Cir.2003); *Blyden v. Mancusi,* 186 F.3d 252, 264 (2d Cir.1999). Therefore, "to state a claim for damages under Section 1983, the plaintiff must allege sufficient facts to demonstrate that defendants were personally or directly involved in the violation, that is, that there was 'personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal.' " *Harris v. Westchester County Department of Corrections,* No. 06 Civ.2011, 2008 WL 953616, at *9 (S.D.N.Y. April 3, 2008) (alteration in original) (quoting *Provost v. City of Newburgh,* 262 F.3d 146, 155 (2d Cir.2001)).

Since the only claim that I do not recommend dismissing is the false arrest claim, I will only address personal involvement of the DA defendants relative to that claim. Only defendants Seewald and Wigdor are alleged to have been personally involved in the plaintiff's arrest. (Compl., ¶ 56). The complaint contains only conclusory and unsupported allegations of the other DA defendants' involvement. Accordingly, I recommend dismissing all of the DA defendants from this action except for defendants Seewald and Wigdor.

### Conclusion

 **\*15** For the reasons above, I recommend that the DA defendants' motion (Docket no. 42) be denied with respect to the false arrest claims asserted against defendants Seewald and Wigdor and granted in all other respects. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Lewis A. Kaplan, Room 2440, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

### All Citations

Not Reported in F.Supp.2d, 2013 WL 149341

### Footnotes

1    Counsel for the DA defendants has been unable to contact defendant Assistant Chief Investigator Terrance Mulderick. They contend, however, that all arguments made on behalf of the DA defendants apply equally to defendant Mulderick. (Memorandum of Law in Support of Motion to Dismiss ("Def.Memo.") at 1 n. 1).

2   Since Mr. Jackson was acquitted at trial, documents related to his criminal prosecution were sealed in accordance with CPL § 160.50.

---

   © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 502948
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
N.D. New York.

Aimee O'NEIL and M.O., Plaintiffs,
v.
Catherine BEBEE; and Oswego
City School District, Defendants.

No. 5:09-CV-1133 (GTS/DEP).
|
Feb. 10, 2010.

**Attorneys and Law Firms**

Amy O'Neil, Minetto, NY, pro se.

### *DECISION and ORDER*

Hon. GLENN T. SUDDABY, District Judge.

 **\*1** Currently before the Court in this a *pro se* civil rights
action filed by Aimee O'Neil ("Plaintiff") is her motion to
proceed *in forma pauperis,* her motion for a stay, and her
two separate letter requests. (Dkt. Nos. 1, 2, 3, 4, and 5.)
For the reasons discussed below, Plaintiff's motion to proceed
*in forma pauperis* is granted; her Complaint is *sua sponte*
dismissed with prejudice due to its frivolous, pursuant to 28
U.S.C. § 1915(e) (2)(B); her motion for a stay and two letter
requests are denied as moot; and she is directed to show cause,
within thirty (30) days of the date of this Decision and Order,
as to why the Court should not issue an Order prohibiting her
from filing any future *pro se* actions in this Court without
prior leave of the Court.

## I. PLAINTIFF'S MOTION TO PROCEED *IN FORMA PAUPERIS*

After carefully reviewing Plaintiff's papers in support of her
motion to proceed in forma pauperis, the Court finds that she
qualifies for *in forma pauperis* status. (*See* Dkt. No. 2.) As a
result, the Court grants Plaintiff's motion to proceed *in forma
pauperis.* [1]

## II. REVIEW OF PLAINTIFF'S COMPLAINT

### A. Court's Duty to *Sua Sponte* Review Complaint

Pursuant to 28 U.S.C. § 1915(e), when a plaintiff seeks to
proceed *in forma pauperis,* "the court shall dismiss the case
at any time if the court determines that ... the action ... (i)
is frivolous or malicious; (ii) fails to state a claim on which
relief may be granted; or (iii) seeks monetary relief against
a defendant who is immune from such relief." 28 U.S.C. §
1915(e)(2) (B). [2] Thus, there is a responsibility on the Court
to determine that a complaint may be properly maintained in
the District before it may permit a plaintiff to proceed with an
action *in forma pauperis. Id.*

In determining whether an action is frivolous, the Court must
look to see whether the complaint lacks an arguable basis in
law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).
Although the Court has a duty to show liberality towards *pro
se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990)
(per curiam), and extreme caution should be exercised in
ordering sua sponte dismissal of a *pro se* complaint before
the adverse party has been served and the parties have had
an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d
37, 41 (2d Cir.1983), there is a responsibility on the Court
to determine that a claim is not frivolous before permitting
a plaintiff to proceed with an action *in forma pauperis* in
order to prevent abuses of the process of the Court, *Harkins
v. Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as well as
discourage the waste of judicial resources.

### C. Legal Standard Governing Dismissals for Failure to
### State Claim

It has long been understood that a dismissal for failure to
state a claim, pursuant to Fed.R.Civ.P. 12(b)(6), may be
based on either or both of two grounds: (1) a challenge to
the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)
(2); or (2) a challenge to the legal cognizability of the
claim. *Jackson v. Onondaga County,* 549 F.Supp.2d 204, 211,
nn. 15-16 (N.D.N.Y.2008) (McAvoy, J., adopting Report-
Recommendation on *de novo* review) [citations omitted].

 **\*2** With regard to the first ground, Fed.R.Civ.P. 8(a)(2)
requires that a pleading contain "a short and plain statement
of the claim *showing* that the pleader is entitled to relief."
Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this
"showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading
contain a short and plain statement that "give[s] the defendant
*fair notice* of what the plaintiff's claim is and the grounds upon

which it rests." *Jackson,* 549 F.Supp.2d at 212, n. 17 [citations omitted]. The main purpose of this rule is to "facilitate a proper decision on the merits." *Id.* at 212, n. 18 [citations omitted].[3]

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. *Id.* at 212, n. 20 [citations omitted]. However, even this liberal notice pleading standard "has its limits." *Id.* at 212, n. 21 [citations omitted]. As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard. *Id.* at 213, n. 22 [citations omitted]; *see also Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968-69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation [s]." *Id .* at 1965 [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* [citations omitted].[4]

As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims brought by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[5] It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se*

pleading) the Court stated, *"Specific facts are not necessary"* to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007) [citation omitted; emphasis added]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.[6]

**\*3** Finally, in reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. This standard is applied with even greater force where the plaintiff alleges civil rights violations and/or where the complaint is submitted *pro se.* However, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed),[7] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards in Fed.R.Civ.P. 8, 10 and 12.[8] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10, and 12 are procedural rules that even *pro se* civil rights plaintiff must follow.[9] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].

## C. Summary of Plaintiff's Complaint

On October 8, 2009, Plaintiff filed her Complaint in this action. (Dkt. No. 1.) The text in the body of the Complaint is single spaced, and its pages are unnumbered. (*Id.*) In only four of the twelve pages (specifically, pages two through five) of the Complaint does Plaintiff make any attempt at numbering paragraphs. (*Id.* at 2-5.) Even when she does so, she does not number the paragraphs consecutively. (*Id.*) Most of the paragraphs are not limited as far as practicable to a single set of circumstances, but extend to numerous sets of circumstances. (*Id.* at 4-10.) In the caption, Plaintiff names herself, as well as her daughter, M.O., as Plaintiffs in the action, and Catherine Bebee and the Oswego City Schools

as the Defendants in the action. (*Id.* at 1.) However, in the body of the Complaint, Plaintiff identifies a host of other Defendants, at one point also seemingly naming M.O. as a Defendant. (*Id.* at 3-12.)

With regard to her claims, construed with the utmost of special leniency, Plaintiff has commenced this action pursuant to 42 U.S.C. § 1983, asserting several civil rights violations. (Dkt. No. 1, Attach. 1 [Civil Cover Sheet].) As summarized by Plaintiff, for example, her claims encompass "tax evasion, fraud, perjury, libel, defamation, intentional infliction of emotional distress, malpractice, negligence, invasion of privacy, violation of unlawful search and seizure, deprivation of due process, and violation of equal rights under the law ... based upon section U.S. 42 section 1983 and 1876 .... "[10] (Dkt. No. 1 at 10.)

In support of these claims, Plaintiff asserts factual allegations regarding a broad range of events occurring from the summer of 2000 to the spring of 2001, including (but not limited to) conspiracy, bribery, kidnaping, and perjury by a social worker. (*See generally* Dkt. No. 1.) More specifically, Plaintiff alleges that, between approximately August of 2000 and April of 2001, Defendant Bebee, a social worker employed by the Oswego City School District, (1) conspired with six other individuals (including members of "the Baker family," who presumably reside in or near Oswego, New York) to kidnap Plaintiff's daughter on December 22, 2000, from a children's hospital in St. Petersburg, Florida, where she was receiving orthopedic medical treatment from Dr. Sheila Love, and transport her to New York, and then (2) perpetrated a fraud on an Oswego County Court in a proceeding presided over by Judge James McCarthy in April of 2001. (*Id.*)

**\*4** Plaintiff further alleges that, in carrying out this conspiracy, Defendant Bebee committed the following acts: (1) she acted at the behest, and/or for the benefit, of Plaintiff's ex-husband (apparently named William Wallace), who purports to be the father of Plaintiff's daughter but who has not proved his paternity; (2) she accepted a bribe of one hundred thousand dollars ($100,000) from someone in, or associated with, the Baker family, which she intended to use for the purpose of a transgender operation; (3) she invaded Plaintiff's privacy by relying on a sealed child protection report documenting the orthopedic injury to Plaintiff's daughter, and by causing Plaintiff's home to be searched illegally; (4) she not only kidnaped Plaintiff's daughter but her two other children, whom she smuggled to a third state before bringing them to New York; (5) she

falsely accused Plaintiff of child abuse; (6) she helped to somehow restrict Plaintiff's parental rights in court through use of fraud, slander and due process violations; and (7) she caused Plaintiff's daughter to be placed with the Baker family in New York, against the recommendation of her daughter's pediatrician. (*Id.*)

As relief, Plaintiff demands $1,000,000.00 in compensatory and punitive damages. (*Id.* at 12.)

**D. Analysis of Complaint**

As an initial matter, the Court notes that the form of Plaintiff's Complaint violates several federal and local rules. *See, e.g.,* Fed.R.Civ.P. 10(a) (requiring caption to name all defendants); Fed.R.Civ.P. 10(b) (requiring that all paragraphs be numbered sequentially, and that each paragraph be limited as far as practicable to a single set of circumstances); N.D.N.Y. L.R. 10.1(a) (requiring text in body of complaint to be double-spaced, and pages to be consecutively numbered). However, in light of the special solicitude that should ordinarily be afforded *pro se* litigants (and because these rule violations pale in comparison to Plaintiff's other pleading deficiencies, described below), the Court will overlook these rule violations. The Court does this with some hesitancy, given Plaintiff's familiarity with the pleading requirements established the local and federal rules, due to her extraordinary litigiousness (*see, infra,* Part IV of this Decision and Order).

The Court notes also that Plaintiff has filed this action not only on her own behalf, but apparently on behalf of her child, M.O., who is a minor. (*See* Dkt. No. 1, at 3; Dkt. No. 2, at 2 [listing M.O. as a dependent].) As Plaintiff previously has been repeatedly advised, M.O. may not proceed on her own behalf. *See* Fed.R.Civ.P. 17(c).[11] Nor is a *"pro se"* non-attorney permitted to represent another person in federal court litigation. *Berrios v. New York City Housing Auth.,* 564 F.3d 130, 132-133 (2d Cir.2009). Accordingly, M.O. is dismissed as a Plaintiff in this action.

With regard to Plaintiff's claims, many of the the factual allegations throughout the Complaint are conclusory, unsubstantiated and rambling; and there are few detailed allegations clearly identifying individual(s), dates, and specific acts of the asserted misconduct forming the basis for alleged constitutional violations. Succinctly stated, the manner in which Plaintiff has set forth her claims is not short and plain, but so verbose, disjointed, vague and confusing that

it is nearly impossible for the Court to assess them, and surely impossible for the Defendants to respond to them and prepare for trial. [12] However, in an extension of special solicitude to Plaintiff, and an effort to provide a more detailed explanation as to why Plaintiff's Complaint is frivolous, the Court will attempt to address the bulk of Plaintiff's claims in more detail.

**1. Section 1983 Pleading Requirements**

**\*5** Generally, to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person or entity acting under color of state law and (2) such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993); *see also Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003) (quoting *West v. Atkins,* 487 U.S. 42, 48 [1988] ).

**a. Person or Entity**

State action is an essential element of any § 1983 claim. *See Gentile v. Republic Tobacco Co.,* 95-CV-1500, 1995 WL 743719, at \*2 (N.D.N.Y. Dec. 6, 1995) (Pooler, J.) (citing *Velaire v. City of Schenectady,* 862 F.Supp. 774, 776 (N.D.N.Y.1994) (McAvoy, C.J.) [citation omitted] ). It is the plaintiff's duty to allege state action on the part of the defendants named in a complaint; and a court may dismiss an action under 28 U.S.C. § 1915(e) where a plaintiff fails to plead such a nexus. *See, e.g., Jenkins v. Murphy,* 08-CV-0921, 2008 WL 4596197, at \*2 (N.D.N.Y. Oct. 14, 2008) (McCurn, J.) [collecting cases]; *Humphrey v. Rescue Mission,* 05-CV-0795, 2005 WL 1661826, at \*2 (N.D.N.Y. July 14, 2005) (Mordue, J.) [collecting cases]. [13]

Here, the action is brought against Catherine Bebee and her employer, the Oswego City Schools. Examples of Plaintiff's allegations against Bebee are as follows:

> D. Invasion of privacy-Catherine Bebee violated, denied, and /or abridged, my privacy under the colors of state laws by misusing and abusing her job position and leaving her jurisdiction, *Freeman v. Rideout,* 808 F 2d 949 (2d Cir.1986).

> 3. Negligence-because Catherine Bebee failed to verify the validity of a court order, paternity order, and her own job duties before leaving the state of New York, Catherine Bebee is also negligent because the injury to [M.O.] was unfounded and legally sealed, in which Catherine Bebee, a

social worker, has total access to a founded or unfounded report, and even if it was founded, it does not entitle Catherine Bebee to travel to the State of Florida as the state of Florida, in their own jurisdiction, have their own social workers, to handle their own investigations based upon findings of Dr. Sheila Love, as Sheila Love was assigned to treat patient [M.O.] Catherine Bebee is not assigned, she has no jurisdiction over [M.O.] and there needs to be a clear, definitive ruling stating Catherine Bebee has no jurisdictional authority over said child, and will never have any. It is very important to establish this factor, because the pattern of retaliation is only continuing so said child cannot attend public school....

(Dkt. No. 1, at 3-4.)

> Catherine Bebee, while under oath, under the penalties of perjury, in front of Judge James McCarthy, stated she was paid a large sum of money to travel to Florida and take said children after a careful conspiracy and several meetings to carefully plan out this act. Catherine Bebee stated she was paid an excessive $100,000.00 and was going to use this money for the purpose a transgender operation, in which she felt entitled to undertake by causing trauma and harm to my home and my family.

**\*6** (Dkt. No. 1, at 5.)

For the sake of brevity, the Court will assume that Plaintiff has alleged facts plausibly suggesting that Defendant Bebee was acting in her capacity as a state actor when she committed the acts in question. Again, the Court does this with some hesitancy, given the fact that it is not clear in what position with the school district Defendant Bebee was acting which would have conferred upon her duties regarding Plaintiff's daughter during the time in question (or even that she was employed by a municipal entity rather than some private non-profit organization). [14]

More problematic is Plaintiff's claim against the Oswego City School District. As an initial matter, to the extent that Plaintiff seeks to impose liability on the City of Oswego or the Oswego City School District, there are no factual allegations plausibly suggesting liability by either entity. Moreover, "[a]lthough municipalities are within the ambit of

section 1983, municipal liability does not attach for actions undertaken by city employees under a theory of *respondeat superior."* *Birdsall v. City of Hartford,* 249 F.Supp.2d 163, 173 (D.Conn.2003) (citing *Monell v. New York City Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 [1978] ).

However, despite the fact that *respondeat superior* liability does not lie, a municipal entity can be held accountable for a constitutional violation which has occurred pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers ... [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels ." *Monell,* 436 U.S. at 690-91, 98 S.Ct. at 2036. Such municipal liability can be alleged in a case as this in various ways including, *inter alia,* through allegation of an officially adopted rule or widespread, informal custom plausibly suggesting "a deliberate government policy or failing to train or supervise its officers." *Bruker v. City of New York,* 337 F.Supp.2d 539, 556 (S.D.N.Y.2004) (citing and quoting *Anthony v. City of New York,* 339 F.3d 129, 140 [2d Cir.2003] ). A plaintiff may also allege such municipal liability by alleging facts plausibly suggesting that municipal officers have acquiesced in or condoned a known policy, custom or practice. *Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir.), *cert. denied, County of Schenectady v. Jeffes,* 531 U.S. 813, 121 S.Ct. 47 (2000); *Wenger v. Canastota Cent. Sch. Dist.,* 95-CV-1081, 2004 WL 726007, at *3 (N.D.N.Y. Apr. 5, 2004) (Scullin, C.J.).

Here, the Complaint is devoid of factual allegations that plausibly suggest liability against the Oswego City School District. Again, it is unclear that Defendant Bebee is employed by that entity (as opposed to being employed by Oswego County or some private non-profit organization). For example, at least one portion of the Complaint alleges that Defendant Bebee is employed by *Oswego County.* (*See* Dkt. No. 1, at 9-10.) In addition, and more importantly, there are no factual allegations plausibly suggesting that, at the time of the alleged constitutional violations, Defendant Bebee was acting pursuant to an official custom, policy, or practice of the Oswego City School District. Rather, the Complaint rather explicitly alleges that Defendant Bebee was acting outside of her authority and pursuant to employment by the Baker Family.

**\*7** For all these reasons, Plaintiff's claims against Defendant Oswego City School District are dismissed for frivolousness.

**b. Right, Privilege, or Immunity Secured by the Constitution**

As to the constitutional violations asserted in Plaintiff's Complaint, references to constitutional rights and amendments are generally confined to five of the twelve pages of the Complaint. (*See generally* Dkt. No. 1, at 1-3, 5, 10.) More specifically, construed with the utmost liberality, Plaintiff's Complaint asserts that Defendant Bebee violated her following three constitutional rights: (1) her right to privacy under the Fourth Amendment; (2) her right to procedural due process under the Fourteenth Amendment; and (3) her right to equal protection of the laws under the Fourteenth Amendment. (*Id.*) In addition, Plaintiff asserts a conspiracy claim under 42 U.S.C. § 1983. (*Id.* at 2, 7-10.) [15]

With regard to Plaintiff's right-to-privacy claim under the Fourth Amendment, Plaintiff alleges that this violation occurred when the following acts occurred: (1) her home, in an unspecified city and state, was illegally searched at an unspecified time by an unspecified individual; and (2) Defendant Bebee relied on a sealed child protection report documenting the orthopedic injury to Plaintiff's daughter, in her effort to kidnap Plaintiff's daughter, transport her from Florida to New York, and/or somehow restrict Plaintiff's parental rights. (*Id.* at 1-2, 4-5.) The first act is simply too vague and speculative to plausibly suggest a Fourth Amendment violation by Defendant Bebee. The second act, as alleged, does not give rise to a Fourth Amendment violation for three reasons: (1) it is highly questionable whether the act plausibly constitutes a violation of N.Y. Social Services Law § 422-a, which permits disclosure of a sealed child protection report by a social services commissioner under certain circumstances; (2) even if the act does plausibly constitute such a violation, a violation of state law does not, in and of itself, give rise to a violation of 42 U.S.C. § 1983, which requires a violation of either the United States Constitution or a federal statute; [16] and (3) even if the act does give rise to a constitutional violation, it is highly questionable whether Plaintiff has standing to assert that violation, because the report concerned Plaintiff's *daughter* (and Plaintiff is as a *pro se* litigant who cannot litigate the claim on behalf of her daughter).

With regard to Plaintiff's due process claim under the Fourteenth Amendment, Plaintiff alleges that Defendants failed to give any her notice and an opportunity to be heard (including an opportunity to present evidence and witnesses

WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works.

such as medical experts), presumably in a legal proceeding in Family Court in Oswego County to terminate Plaintiff's parental rights and/or modify her visitation rights. (*Id.* at 1-2.) This vague allegation does not allege facts plausibly suggest how much process was due because it does not allege in what type of proceeding Plaintiff was denied procedural protections (e.g., a modification of Plaintiff's visitation rights, a termination of Plaintiff's parental rights, a temporary removal of Plaintiff's daughter with the written consent of the person legally responsible for her care, a preliminary order of removal of Plaintiff's daughter after a petition is filed, a preliminary order of removal of Plaintiff's daughter before a petition is filed, or an emergency removal of Plaintiff's daughter without a court order). Indeed, based on Plaintiff's other factual allegations, it is plausible that the proceeding was permitted to be conducted *ex parte.* It is even conceivable that Plaintiff did not even have standing to participate in the proceeding.

**\*8** With regard to Plaintiff's equal protection claim under the Fourteenth Amendment, Plaintiff alleges that Defendant Bebee treated Plaintiff unequally under the law by exceeding the scope of her job duties to (1) invade Plaintiff's privacy, (2) travel to Florida to kidnap her daughter, and (3) "impact" Plaintiff by traumatizing her daughter, and depriving her daughter of medical treatment in New York State. (*Id.* at 2-5.) To assert an equal protection claim, a plaintiff must allege facts plausibly suggesting that she was intentionally treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. Where the alleged classification involves a "suspect class" or "quasi-suspect class," the alleged classification is subject to "strict scrutiny" by a court. Otherwise, the alleged classification is subject to only "rational basis scrutiny." To survive such scrutiny, the alleged classification need only be "rationally related" to a "legitimate state interest."

Here, Plaintiff has not even alleged facts plausibly suggesting there has been any classification at all in this case, i.e., that she was intentionally treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. (Rather, she alleges that Defendant Bebee acted differently compared to other social workers.) Moreover, even if Plaintiff had alleged facts plausibly suggesting that she was treated differently from others, she has not alleged facts plausibly suggesting that the alleged discrimination she experienced was not rationally related to a legitimate state interest (i.e., protecting Plaintiff's

daughter by returning her to lawful custodians in New York State).

With regard to Plaintiff's conspiracy claim under 42 U.S.C. § 1983, she alleges that, between approximately August and December of 2000, Defendant Bebee conspired with numerous members of "the Baker family" to kidnap Plaintiff's daughter on December 22, 2000, from a children's hospital in St. Petersburg, Florida, and transport her to New York. (*Id.* at 2, 7-10.) More specifically, Plaintiff alleges that this conspiracy possessed the following characteristics: (1) it was perpetrated by seven individuals; (2) it was motivated, in part, by revenge against Plaintiff for causing the "drug bust" of one of the conspirators; (3) it was motivated also by the certain other conspirators' need for money to satisfy illegal gambling debts and to pay for a transgender operation; (4) it was preceded by witness tampering and extortion by one of the conspirators, and the making of a death threat to Plaintiff by another of the conspirators while Plaintiff was approximately eight months pregnant; (5) it culminated in the making of a bribe of $100,000 to Defendant Bebee, and a bribe of an unspecified amount to two other conspirators; and (6) it was followed by tax evasion by at least five of the seven conspirators. (*Id.*)

**\*9** To sustain a conspiracy claim under § 42 U.S.C.1983, a plaintiff must demonstrate that a defendant "acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights ... secured by the Constitution or the federal courts." *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995) (citations and internal quotation marks omitted). Conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983. *See Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.), *cert. denied,* 464 U.S. 857 (1983).

Here, the only factual allegation contained in Plaintiff's Complaint that plausibly suggests a "meeting of the minds" between Defendant Bebee and any of the other six alleged conspirators is her receipt-at an unspecified place and time from an unidentified individuals-of $100,000 for a transgender operation. (Dkt. No. 1, at 2, 7-10.) These pleading deficiencies-which render his claim vague and conclusory-are fatal to Plaintiff's conspiracy claim. *See Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990), *cert. denied,* 499 U.S. 937 (1991); *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987); *Warren v. Fischl,* 33 F.Supp.2d 171, 177 (E.D.N.Y.1999).

For all these reasons, Plaintiff's claims against Defendant Bebee are dismissed for frivolousness. [17]

### 2. Statute of Limitations

Even when construed with the utmost of special leniency, the events giving rise to Plaintiff's claims occurred between approximately August of 2000 (when the conspirators started meeting about Plaintiff) and April of 2001 (when Defendant Bebee perpetrated a fraud on an Oswego County Court in a proceeding presided over by Judge James McCarthy in April of 2001. (Dkt. No. 1, at 3-8, 10.)

"The applicable statute of limitations for § 1983 actions arising in New York requires claims to be brought within three years ." *Pinaud v. County of Sufolk,* 52 F.3d 1138, 1156 (2d Cir.1995) [citations omitted]; *see also Connolly v. McCall,* 254 F.3d 36, 40-41 (2d Cir.2001) ("[Plaintiff's] federal constitutional claims, brought pursuant to 42 U.S.C. § 1983, are governed by New York's three-year statute of limitations for personal injury actions ....") [citations omitted]. A claim arising under Section 1983 accrues "when the plaintiff knows or has reason to know of the harm that he seeks to redress." *Connolly v. McCall,* 254 F.3d 36, 41 (2d Cir.2001) [internal quotation marks and citation omitted], *accord, Pearl v. City of Long Beach,* 296 F.3d 76, 80 (2d Cir.2002) [internal quotation marks and citations omitted].

Here, the three-year limitations period started running, at the latest, in April of 2001, and expired, at the latest, in April of 2004. Under the circumstances, the applicable three-year limitations period clearly bars Plaintiff's claims. The Court notes that Plaintiff, an experienced *pro se* litigant who has had similar if not identical claims barred due to untimeliness, was, when she filed this action, undoubtedly aware of this limitation period. *See, e.g., O'Neil v. Oswego County Family Court,* 07-CV-6016, Decision and Order, at 11-12 (W.D.N.Y. filed Feb. 20, 2007); *O'Neil v. Fulton Police Dept.,* 07-CV-6045, Decision and Order, at 1, 16 (W.D.N.Y. filed Feb. 28, 2007); *O'Neil v. N.Y.S. Dept. of Educ.,* UID 2007-038-526, Decision (N.Y. Ct. Cl. filed March 30, 2007).

**\*10** For this alternative reason, Plaintiff's claims against Defendants are dismissed for frivolousness.

### 3. Res Judicata and Collateral Estoppel

In the following three cases, Plaintiff's claims against Defendant Bebee and Oswego City Schools were previously dismissed on multiple grounds, including untimeliness:

(1) *O'Neil v. Oswego County Family Court,* 07-CV-6016, Decision and Order, at 10-12 (W.D .N.Y. filed Feb. 20, 2007) (dismissing Plaintiff's claims against Defendants Bebee and Oswego City Schools based on untimeliness and lack of federal jurisdiction); (2) *O'Neil v. State of New York,* 07-CV-0071, Decision and Order, at 6-7 (N.D.W. Va. filed July 19, 2007) (dismissing Plaintiff's claims against Defendants Bebee and City of Oswego for lack of federal jurisdiction); and (3) *O'Neil v.. N.Y.S. Dept. of Educ.,* UID 2007-038-526, Decision (N.Y. Ct. Cl. filed March 30, 2007) (dismissing Plaintiff's claims against Defendant Bebee as untimely pursuant to, *inter alia,* New York State's three-year statute of limitations governing certain of those claims).

For this alternative reason, Plaintiff's claims against Defendants are dismissed for frivolousness.

### 4. Nature of Dismissal

Generally, when a *pro se* action is dismissed *sua sponte,* the plaintiff should be allowed to amend his or her complaint once before their complaints are dismissed. *See Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999). However, such leave is not required where any amended complaint would be futile due to the substantive nature of the fatal flaws in the original complaint. [18] Here, the flaws in Plaintiff's Complaint are substantive in nature such that better pleading would not cure them. As a result, the Court finds that it would be futile to afford Plaintiff an opportunity to amend her Complaint.

### III. PLAINTIFF'S MOTION FOR STAY AND TWO LETTER REQUESTS

Plaintiff's motion to stay the proceedings is rendered moot by the Court's dismissal of Plaintiff's action with prejudice due to its frivolousness. As a result, that motion is denied as moot. In the alternative, that motion is denied as procedurally improper in that it is unsupported by an affidavit, as required by Local Rule 7.1(a). Moreover, that motion is denied on the second alternative ground that it is unsupported by a showing of cause. (Dkt. No. 3.) Specifically, Plaintiff appears to be requesting that this action be stayed "in order to criminally arrest employees required to mandate abuse and were allegedly involved in human trafficking,...." (*Id.* at 2.) Finally, as for Plaintiff's two letters requesting requested that the Clerk issue summonses for service upon Defendants, in light of the foregoing, those requests are denied as moot. (Dkt.Nos.4, 5.)

## IV. ORDER TO SHOW CAUSE

A review of Plaintiff's litigation history reveals that, in addition to filing the current action in this District, she has filed five (5) other *pro se* civil rights actions in this District: (1) *O'Neil v. Diskey,* 5:09-CV-0540, Complaint (N.D.N.Y. filed on May 7, 2009) (transferred by Suddaby, J., to the Middle District of Florida on May 20, 2009); (2) *O'Neil v. Van Auser,* 5:09-CV-0594, Complaint (N.D.N.Y. filed on May 20, 2009) (dismissed for lack of subject matter jurisdiction by Mordue, C.J., on July 21, 2009); (3) *O'Neil v. Ponzi-Flett,* 5:09-CV-0983, Complaint (N.D.N.Y. filed on Aug. 28, 2009) (dismissed for frivolousness by Suddaby, J., on February 9, 2010); (4) *O'Neil v. Ponzi,* 5:09-CV-0985, Complaint (N.D.N.Y. filed on Aug. 28, 2009) (dismissed as duplicative by Suddaby, J., on Oct. 22, 2009); and (5) *O'Neil v. Pasco County,* 5:09-CV-1175, Complaint (N.D.N.Y. filed on Oct. 21, 2009) (transferred by Suddaby, J., to the United States District Court for the Middle District of Florida on December 7, 2009).

 **\*11** Moreover, a review of the Federal Judiciary's Public Access to Court Electronic Records ("PACER") reveals that Aimee O'Neil has filed some forty (40) *pro se* civil rights actions in other federal courts across the country. These actions include thirty-two (32) *pro se* civil actions filed in the Western District of New York in 2007 (eighteen of which were filed in the same week). These actions also include seven (7) *pro se* civil actions filed in the Northern District of West Virginia. These actions also include two (2) *pro se* civil actions filed in the Middle District of Florida. Finally, these actions include one (1) *pro se* civil actions filed in the Western District of Michigan.

All of Plaintiff's actions filed in the Western District of New York were *sua sponte* dismissed with prejudice as frivolous. *See O'Neil v. Fulton Police Dept.,* 07-CV-6045, Decision and Order, at 7-18 (W.D.N.Y. filed Feb. 28, 2007). Similarly, all of Plaintiff's actions filed in the Northern District of West Virginia were *sua sponte* dismissed with prejudice as frivolous. *See O'Neil v. Cornerstone Homes,* 07-CV-0069, 2007 WL 2116410, at *1-5 (N.D.W.V. July 19, 2007), aff'd by O'Neil v. Oswego County Dept. of Soc. Servs., 258 F. App'x 581 (4th Cir. Dec. 17, 2007). As for Plaintiff's three remaining actions in other districts, two were *sua sponte* dismissed (the third having been filed merely a month ago). Finally, it is important to note that many of the forty-six (46) *pro se* civil actions that Plaintiff has filed have been duplicative in nature. Indeed, the current action is duplicative in nature. *See, supra,* Part II.3. of this Decision and Order.

Under such circumstances, a federal district court may impose a reasonable filing restriction on a *pro se* litigant in that particular court, pursuant to Fed.R.Civ.P. 11, 28 U.S.C. § 1651(a), and its inherent authority to control and manage its own docket so as to prevent abuse in its proceedings. For example, a federal district court may, after providing an appropriate opportunity to be heard, prohibit a vexatious litigant from filing, in that particular court, any action *pro se* (that is, without counsel), without prior leave of that court. *See Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system.") [internal quotations and citations omitted]; *In re Sassower,* 20 F.3d 42, 44 (2d Cir.1994) (where a *pro se* plaintiff has demonstrated a "clear pattern of abusing the litigation process by filing vexatious and frivolous complaints," a "leave to file" requirement may be instituted by the court as an appropriate sanction); *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) ("[T]he district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."); *Azubuko v. Unknown Boston Police Officers,* 08-CV-0330, 2008 WL 1767067, at *1 (N.D.N.Y. Apr. 16, 2008) (McCurn, J.).

 **\*12** It is worth noting that at least two federal district courts have imposed such a restriction on Plaintiff. *See O'Neil v. Fulton Police Dept.,* 07-CV-6045, Decision and Order, at 18-20 (W.D.N.Y. filed Feb. 28, 2007); *O'Neil v. Cornerstone Homes,* 07-CV-0069, 2007 WL 2116410, at *6 (N.D.W.V. July 19, 2007), aff'd by O'Neil v. Oswego County Dept. of Soc. Servs., 258 F. App'x 581 (4th Cir. Dec. 17, 2007).

Because of her history of filing vexatious, harassing or duplicative lawsuits, Plaintiff is hereby warned that the Court will not tolerate the filing of frivolous actions by her in the future. As a result, she is directed to show cause, within thirty (30) days of the date of this Decision and Order, as to why this Court should not issue an Order barring her from filing any future *pro se* actions without first obtaining leave of the Court. In the event that Plaintiff fails to show such cause, she will be prohibited from filing, in this Court, any action *pro se* (that is, without counsel), without prior leave of the Court, pursuant to Fed.R.Civ.P. 11, 28 U.S.C. § 1651(a) and the Court's inherent authority to control and manage its own docket so as to prevent abuse in its proceedings.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED;** and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is *sua sponte* **DISMISSED** **with prejudice** due to its frivolousness, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i),(ii); and it is further

**ORDERED** that Plaintiff's motion for a stay (Dkt. No. 3) is **DENIED;** and it is further

**ORDERED** that Plaintiff's requests that the Clerk issue summonses for service upon the Defendants (Dkt.Nos.4, 5) are **DENIED;** and it is further

**ORDERED** that *Plaintiff is hereby directed to* **SHOW CAUSE,** *within* **THIRTY (30) DAYS** *of the date of this*

*Decision and Order, why this Court should not issue an Order barring her from filing any future pro se actions in this Court without first obtaining leave of the Court. In the event that Plaintiff fails to show such cause, she will be* **PROHIBITED** *from filing, in this Court, any action pro se (that is, without counsel) without prior leave of the Court, pursuant to* 28 U.S.C. § 1651(a) *and the Court's inherent authority to control and manage its own docket so as to prevent abuse in its proceedings.*

*The Court hereby certifies, for purposes of* 28 U.S.C. § 1915(a) *(3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.*

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 502948

Footnotes

1   Plaintiff should note that, although her motion to proceed *in forma pauperis* has been granted, she would still be required to pay other fees that she incurred in the action, including copying and/or witness fees, if this action were to proceed.

2   *See also Monestime v. FCC,* 09-CV-0296 (N.D.N.Y. Mar. 24, 2009) (Suddaby, J.) ("[F]ederal courts may (and have) *sua sponte* dismissed *pro se* civil rights complaints (in *in forma pauperis* proceedings) where the allegations therein are fantastic, fanciful, delusional, and/or paranoid. Indeed, this Court has done so."); *Henderson v. Clover Field,* 08-CV-0504, 2008 WL 2405705 (N.D.N.Y. June 11, 2008) (McCurn, J., adopting Report-Recommendation of Lowe, M.J.); *Mercier v. Mercier,* 07-CV-0523, 2007 WL 1582267, at *1-2 (N.D.N.Y. May 25, 2007) (Kahn, J.).

3   *See also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ( "Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F .2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

4   *See also Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) ( "[The Supreme Court] is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* ).

5   *See, e.g., Jacobs v. Mostow,* 271 F. App'x 85, 87 (2d Cir. March 27, 2008) (in *pro se* action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Rule 32.1[c][1] of the Local Rules of the Second Circuit); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

6   For example, in *Erickson,* the Supreme Court held that, because the plaintiff-prisoner had alleged that, during the relevant time period, he suffered from hepatis C, he had alleged facts plausibly suggesting that he possessed a sufficiently serious medical need for purposes of an Eighth Amendment claim of inadequate medical care. *Erickson,* 127 S.Ct. at 2199-2200. Expressed differently, the Court held that such a plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication (a requirement that had been imposed by the district court). This point of law is hardly a novel one, which is presumably why the *Erickson* decision was relatively brief. Prior to the Supreme Court's decision, numerous decisions, from district courts within the Second Circuit alone, had found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208,

2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000). The important thing is that, in *Erickson,* even the *pro se* plaintiff was required to allege some sort of fact.

7  *Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191 (2d Cir.2008); *see also Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983).

8  *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972), *cert. denied,* 411 U.S. 935, 93 S.Ct. 1911 (1973) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi,* 469 F.2d at 692) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi* within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995); *accord Wachtler v. Herkimer County,* 35 F.3d 77, 82 (2d Cir.1994).

9  *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 1984 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 2541, n. 46 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*"pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *accord, Traguth,* 710 F.2d at 95; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if her mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

10  Plaintiff is advised that there is no Section 1876 in volume 42 of the United States Code. Plaintiff also references Section 1871 in the first paragraph of her Complaint, which is unrelated to civil rights, and instead addresses international cooperation and coordination of the National Science Foundation with foreign policy. *See* 42 U.S.C. § 1871.

11  In *O'Neil v. Van Auser* and *O'Neil v. Ponzi-Flett,* Plaintiff named M.O. as a plaintiff, and in both cases she was advised that M.O. must be properly represented before commencing an action in federal court. *See O'Neil v. Van Auser,* 5:09-CV-0594, Memorandum-Decision and Order, at 1, n. 1 (N.D.N.Y. filed July 21, 2009) (Mordue, C.J.); *see also O'Neil v. Ponzi-Flett,* 5:09-CV-0983, Report-Recommendation, at 2 (N.D.N.Y. filed Sept. 9, 2009) (Lowe, M.J.).

12  *See Rest v. Weissmane,* 08-CV-0340, 2008 WL 5191733, at *5 (N.D.N.Y. Dec. 10, 2008 (Kahn, J. adopting on *de novo* review Report-Recommendation of Lowe, M.J.) (dismissing claims that "[e]ven construed with the special solicitude," were confusing, ambiguous, vague and/or otherwise unintelligible under Federal Rules of Civil Procedure 8(a)(2) and 10(b)").

13  *See also DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306, 311 (2d Cir.) (affirming dismissal of complaint where plaintiff failed to include allegations of state action in complaint), *modified on other grounds,* 520 F.2d 409 (2d Cir.1975); *Lawson v. Abrams,* 84-CV-4325, 1988 WL 49244, at *4 (E.D.N.Y. May 6, 1988) (dismissing as frivolous pro se complaint where plaintiff failed to allege state action on part of defendants), *accord, Carollo-Gardner v. Diners Club,* 628 F.Supp. 1253, 1256-57 (E.D.N.Y.1986).

14  Indeed, the Court notes that Plaintiff alleges that Defendant Bebee had no professional relationship with Plaintiff's daughter. (Dkt. No. 1 at 5-6.)

15  The Court notes that Plaintiff also asserts several claims arising under New York State law, including (but not limited to) negligence, fraud, defamation, invasion of privacy, malpractice, breach of confidentiality, and intentional infliction of emotional distress. (*Id.* at 3-6, 10.) However, because a cause of action under 42 U.S.C. § 1983 may not be premised solely on a violation of state law (but requires a violation of either the United States Constitution or a federal statute), and because the Court would decline to exercise supplemental jurisdiction over any of Plaintiff's pendent state law claims, the Court need not, and will not, analyze these claims in this Decision and Order.

16  In addition, the Court notes that New York Social Service Law § 419 grants immunity to individuals, officials and institutions for making good faith reports and other related actions from any liability, civil or criminal. N.Y. Soc. Serv. Law § 419.

17  The Court notes that Plaintiff's Complaint also raises the specter of a claim under a federal statute known as the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. 104-191, 110 Stat.1936 (1996). HIPAA was enacted by Congress in order to protect against unwarranted disclosure of health records and information, authorizing the Secretary for Health and Human Services "to make final regulations concerning the privacy of individually identifiable health information." *Barnes v. Glennon,* 05-CV-0153, 2006 WL 2811821, at *5 (N.D.N.Y. Sept. 28, 2006) (*citing and quoting Nat'l Abortion Fed'n v. Ashcroft,* 03-CV-8695, 2004 WL 555701, at *2 [S.D.N.Y. Mar. 19, 2004], and 42 U .S.C. §§ 1320d through 1320d-8). Courts addressing claims similar to the claim implicitly raised by Plaintiff have determined that, in light of the availability of monetary and criminal penalties to be assessed by the Secretary of Health and Human Services or the State, *see* 42 U.S.C. § 1320d-6(b), the statute does not confer an independent private right of action.

*See Barnes,* 2006 WL 2811821, at *5-6; *Cassidy v. Nicolo,* 03-CV-6603, 2005 WL 3334523, at *5-6 (W.D.N.Y. Dec. 7, 2005); *see also Pecou v. Forensic Committee Personnel,* 06-CV-3714, 2007 WL 1490450, at *2 (E.D.N.Y. Jan. 5, 2007). Courts presented with the issue also have held that, because HIPAA does not create a private right, it cannot be privately enforced via Section 1983. *Adams v. Eureka Fire Protection Dist.,* 09-CV-1315, 2009 WL 3352032, at *1 (8th Cir. Oct. 15, 2009); *see also, Auld v. Davidson,* No. 08-3110-TC, 2009 WL 1559777, at * 1 (D. Or. June 2, 2009); *Howard v. Douglas County Jail,* No. 09-3085-SAC, 2009 WL 1504733, at * 4 (D.Kan. May 28, 2009); *Frazier v. Arkansas Dept. of Corr.,* 07-CV-00184,2009 WL 856990, at *9 (E.D.Ark. Mar. 30, 2009). Accordingly, the Court finds that any alleged HIPAA violations will not support Plaintiff's Section 1983 claim, and, to the extent her Complaint is construed as asserting a cause of action under HIPAA, the claim is subject to dismissal as a matter of law.

18 *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") [citation omitted].

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

---